ACHESON, Circuit Judge.
This cause is a proceeding under the act of congress of March 3, 1887, entitled “An act to provide for the bringing of suits against the government of the United States,” whereby jurisdiction is conferred upon the circuit courts of the United States, concurrently with the court of claims, to hear and determine certain claims against the government of the United States. 24 Stat. 505. The suit was commenced in the court below on the 23d day of February, 1895. The claimants, William Utz, Thomas M. Garrett, and William H. Kirby, in their petition, set up as the foundation of their claim a written contract, dated January 15, 1886, entered into by and between the petitioners, as parties of the first part, and the United States, as party of the second part, whereby it was agreed that the petitioners would do all the cartage of merchandise in the custody of the government at the port of New York “from the sixteenth day of January, 1886, up to and including the fifteenth day of January, 1888, at the rate of eighteen (18) cents per package for all packages from the importing vessel, and from general order store and warehouse to public store, with the exception ■of sample packages; and that said parties of the first part will cart all sample packages from all points at the rate of one (1) cent per package, the said parties of the first part paying all ferriage incurred in carrying out this agreement.” The suit was brought for the recovery of a balance alleged by the petitioners to be due to them from the United States under this contract, the petitioners averring that they had carted a large number of packages, upon which they were entitled, under the contract, to receive payment at the rate of 18 cents per package, but upon which packages they had received payment at the rate of only 1 cent per package. The ■court below sustained the claim of the petitioners to the extent of *850 $4,501.77, and gave judgment in their favor against the United States for that sum. The case is here upon a writ of error sued out by the government.
Two principal questions are here involved: First, whether the term “sample packages,” as used in the contract, covered only such packages as consisted of nondutiable samples, or whether it also embraced packages consisting of dutiable samples; second, whether the claim of the petitioners was barred by the statutory limitation.
The defendant below submitted to the couit the following proposition:
“That as the plaintiffs and petitioners made a binding agreement with the defendant to cart all sample packages of merchandise for the sum of one (1) cent per package, that no other or greater amount than the said sum of one (1) cent per package could be recovered, it being immaterial whether the sample packages so carted contained dutiable goods as samples, or samples of goods which were free from paying duty to the United States.”
This proposition the court denied; and, in stating its conclusion of law, the court, upon the mere assumption that the rate of cartage for “sample packages” was fixed so low, because of the lack of revenue to the government from such packages, said:
“It seems quite clear that the true test of a ‘sample’ lay in the fact that it was undutiable. The mere marking of packages as ‘samples’ by the shipper or others could in no wise affect the rights of these plaintiffs under this contract. The criterion by which packages were to be classified is to be found in the character of goods which they contained, whether they were dutiable or nondutiable. For all packages canted the plaintiffs were to receive eighteen cents per package, excepting those which were samples, i. e. non-dutiable. For these but one cent was allowed.”
We are not able, however, so to read this contract. We search its provisions in vain to find any warrant for holding that the cartage of “sample packages,” if they contained duty-paying merchandise, was to be at the rate of eighteen cents per package, and that only “sample packages” consisting of nondutiable merchandise were to be carted at the rate of one cent per package. No such distinction is expressed or hinted at in the contract. By their agreement the parties fixed the cartage rate of eighteen cents per package for all packages, “with the exception of sample packages”; and then followed the explicit stipulation “that said parties of the first part will cart all sample packages from all points at the rate of one (1) cent per package.” The contract having thus clearly provided that “all sample packages” should be carted at the rate of one cent per package, how can the court, proceeding upon the basis of the contract itself, declare that that rate of compensation was applicable only to one particular class of sample packages? To do this would be not to construe doubtful language in order to reach the imperfectly expressed intention of the parties, but to make a material alteration in their plain stipulation. The court is not at liberty, upon a mere conjecture as to the supposed actuating motive of the parties, to introduce into their stipulation a qualifying term, ani thus restrict the stipulation to dutiable sample packages, when the parties have said “all sample packages.” We are of the opinion that the court below erred in holding that, under this contract, the petitioners *851 were entitled to recover more than one cent per package for the cartage of sample packages which contained dutiable merchandise.
The first section of the said act of March 3, 1887, contains a proviso in the words following:
“Provided, that no suit against the government of the United States shall be allowed under this act unless the same shall have been brought within six years after the right accrued for which the claim is made.”
This provision, it will be perceived, is jurisdictional. To maintain a suit under the act, it must be commenced within six years after the alleged right accrued. Here the petitioners’ right of action fully matured in February, 1888. This suit was not brought until more than seven years after the rights accrued for which the claim is made. In the face of the above-quoted proviso, how could this suit be entertained when it was brought?
In sustaining the action, the court below relied upon U. S. v. Lippitt, 100 U. S. 663, 669. That case, however, ruled merely that the limitation prescribed by the act of March 3, 1863, amendatory of the act establishing the court of claims, does not bar in that court a claim referred to it for determination by the head of an executive department under statutory authority, provided it was presented for settlement at the proper department within six years after it accrued. The supreme court there said:
“The eases thus transmitted for judicial determination are, in the sense of the act, commenced against the government when the claim is originally presented at the department for examination and settlement. Upon their transfer to the court of claims, they are to be ‘proceeded in as other eases pending in said court.’ ”
There was a like ruling in the case of U. S. v. New York, 160 U. S. 598, 16 Sup. Ct. 102. The case in hand, however, is not governed by these decisions, which relate exclusively to claims transmitted by the head of an executive department to the court of claims for final adjudication. Here the bringing of suit within six years after right accrued was a condition not to be avoided by the claimants. Undoubtedly, the right of action accrued to these petitioners as soon as the money claimed by them became payable by the terms of che contract sued on. To sustain a suit therefor against the government, it was not necessary for the claimants to present their claim to an executive department before suing. Clyde v. U. S., 13 Wall. 38.
How, the petitioners’ right having fully accrued in February, 1888, the six-years limitation began to run then. The presentation of the claim to the treasury department in the year 1893 did not stop the running of the statute, nor was the petitioners’ right of action suspended during the investigation of the claim by the executive officers. The forbearance of the claimants to sue was altogether voluntary on their part, and it is not within the power of the court to relieve them from the consequence of their failure to comply with the condition of the statute. Finn v. U. S., 123 U. S. 227, 233, 8 Sup. Ct. 82. We are of opinion that this suit was brought too late, and that the’ court below erred in overruling the defense on that ground, set up by the government. This conclusion accords with *852 the decision of the court of claims in the well-considered case of Carlisle v. U. S., 29 Ct. Cl. 414.
We have not overlooked the finding of the court below that in the year 1893, “under and by directions of the secretary of the treasury, the said claim of the petitioners was audited by the collector of customs at the said port of New York at the sum of $4,50177/ioo, and that sum was then and there found to be due said petitioners from the defendant.” It is, however, very certain that the so-called “au'dit” by the collector did not partake of the nature of a judicial determination. It was a mere reference of the claim by the treasury department to the collector for examination and report. The action of the collector was merely advisory. His report bound nobody. Had it been unfavorable to the petitioners, it would not have concluded them. U. S. v. Harmon, 147 U. S. 268, 13 Sup. Ct. 327. It is authoritatively settled that “the action of executive officers in matters of account and payment cannot, be regarded as a conclusive determination when brought in question in a court of justice.” Wisconsin Cent. R. Co. v. U. S., 164 U. S. 190, 205, 17 Sup. Ct. 45.
Nor can we accept the suggestion that the action of the collector relieved these claimants from the operation of the statutory limitation. Here we may appropriately quote the language of the supreme court in Finn v. U. S., supra:
“An individual may waive such a defense either expressly or by failing to plead the statute; but the government has not expressly or by implication conferred authority upon any of Its officers to waive the limitation imposed by statute upon suits against the United States in the courts of claims."
The judgment of the circuit court is reversed, and the cause is remanded to that court, with direction to dismiss the petition.