Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff possessed two shipbuilding contracts entered into by the Globe Shipbuilding Company, of Superior, Wisconsin, on June 8, 1917. The contracts called for the construction of two steel cargo vessels of 3,500 tons deadweight capacity, and were to cost $620,000.00 each. One vessel was to be delivered on November 30, 1918, and the other on October 15, 1919.
On August 3, 1917, the contracts were requisitioned by the United States Shipping Board Emergency Fleet Corporation in pursuance of the act of June 15, 1917. The plaintiff has not received any compensation as provided for in the statute.
The case is governed upon its merits by the decision of the Supreme Court in Brooks-Scanlon Corporation v. United States, 265 U. S. 106. The right of recovery is alone contested upon the single issue of the statute of limitations. Section 156 of the Judicial Code provides that “ Every claim against the United States cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court, * * * within six years after the claim first accrues.” The act of June 15, 1917, 40 Stat. 182, 183, provides in section (e) that—
“Whenever the United States shall cancel, modify, suspend, or requisition any contract, make use of, assume, *204 occupy, requisition, acquire, or take over any plant or part thereof, or any ship, charter, or material, in accordance with the provisions hereof, it shall make just compensation therefor, to be determined by the President; and if the amount thereof, so determined by the President, is unsatisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation therefor, in the manner provided for by section twenty-four, paragraph twenty, and section one hundred and forty-five of the Judicial Code.”
Subsequently the foregoing provision was repealed by the Merchant Marine Act, 1920, 41 Stat. 988, 989, section 2 (a), subject to the following provision:
“(c) As soon as practicable after the passage of this act the board shall adjust, settle, and liquidate all matters arising out of or incident to the exercise by or through the President of any of the powers or duties conferred or imposed upon the President by any such act or parts of act; and for this purpose the board, instead of the President, shall have and exercise any of such powers and duties relating to the determination and payment of just compensation : Provided, That any person dissatisfied with any decision of the board shall have the same right to sue the United States as he would have had if the decision had been made by the President of the United States under the acts hereby repealed.”
The plaintiff was advised on September 19, 1917, by the Fleet Corporation of the requisitioning of his contracts, and requested to “ as soon as possible ” supply the corporation with a detailed statement of expenditures, etc., it being the stated purpose of the officer sending the letter to reimburse the plaintiff, so far as available funds would permit, following an investigation of the data so furnished. A voluminous correspondence passed between the Fleet Corporation and the contractor, in which reference is frequently made to the plaintiff. The first positive statement bearing upon compensation emanated from the plaintiff on February 9, 1918, in a letter of inquiry addressed to the corporation seeking a fixed time for the adjustment of reimburse *205 ment for loss occasioned by the requisition order. A response to this communication is set forth in two letters from the corporation, one dated February 18, 1918, and the other March 27, 1918. Both letters point out the method of preferring claims and the last one enters into detail. On April 17, 1918, the plaintiff complied and returned the data set forth in the two foregoing letters, and nothing further seems to have been done by the Fleet Corporation until February 18, 1920, over two years later, when the corporation again advised the plaintiff that his claim had been referred to “ requisition claims committee for consideration and adjustment,” and extended an invitation to the plaintiff to appear before the committee in person. On March 1, 1920, the plaintiff is advised that his presence is not essential and that the committee will proceed to an award and submit the same to the Shipping Board for approval. Additional 'correspondence pro and con followed, plaintiff’s attorney asserting that the claim had been considered by the requisition claims committee and thereafter, on November 14, 1922, disallowed. Further correspondence between the parties in 1923 points out the fact that the Shipping Board is awaiting the decision of the Court of Claims in the Brooks-Scanlon Corporation case, supra, and that when the case is decided the board would have the benefit of the same. The case was decided, and notwithstanding the decision the board did not make the plaintiff .an allowance, Hence this suit filed November 25, 1925. It is, of course, apparent that if the plaintiff’s cause of action arose upon the date of the requisition order, this suit is barred by limitation.
The act of June 15, 1917, a war measure, granted an •extraordinary power; the statute authorized a proceeding .affecting the property of a vast number of citizens under circumstances of an acute emergency. The property requisitioned had to be paid for and Congress clearly recognized the injustice of a summary taking without affording the injured party a just degree of relief aside from the right to sue for compensation in the courts. Congress was thereby saying to a claimant, we offer you an opportunity to avoid *206 litigation and obtain relatively immediate relief; in fact, litigation is to be discouraged, and a method provided by which a just settlement may be brought about, without closing the doors of the courts if unsatisfactory. It is not to be presumed that under the act an unjust or unremunerative compensation would be fixed; on the contrary, many claimants accepted the award and litigation was to an appreciable extent avoided. The method prescribed by the act imposed an affirmative duty upon the President or those to whom he delegated his authority. The machinery established to effectually carry the relief into operation was a written statement of the fact of requisition and a notice to the owner to present data disclosing the amount of his loss and the compensation demanded. This was followed by investigation and subsequently an award or denial of relief. With respect to the requisition of contracts, a controversy arose, the defendant contending that the requisition order took over the ships and not the contracts to construct the same. A positive refusal to pay on any other basis obtained, and it was not until the decision of the Supreme Court in the Brooks-Scanlon Corporation case that this issue was finally determined. This case was decided on May 12, 1924, and from that date forward there was no obstacle in the way allowing this plaintiff just compensation for the taking of his contracts. A letter written to plaintiff’s attorney in .1923, subsequent to the disallowance of plaintiff’s claim in 1922, discloses the fact that the Shipping Board was awaiting this decision and fully realized its importance to claimants. The act of 1920 extended the provisions of the act of June 15, 1917, gave the board ample authority to fix just compensation, and was clearly intended to continue the relief offered to claimants by the act of June 15, 1917.
The acts of 1917 and 1920, we think, established a method of settling this class of claims; they provided a remedy and conferred a right upon the claimant to exhaust the remedy, and this the plaintiff did in this case. The claim was prosecuted as the board directed; the delays are not to be attributed to the plaintiff for it was the duty of the board to fix his compensation or deny it, and this was not done until late in 1922. In the case of Curtis v. United States, 65 C. *207 Cls. 186, the board paid the plaintiff $14,726.25 on December 31, 1926, for land taken August 7, 1918, and in this same case paid for another interest in the land $1,955.63 on April 11, 1927, both payments having been delayed because of pending controversy over just compensation. In the case of the City of Cape May v. United States, 64 C. Cls. 407, the property was taken December 2, 1918, and award made September 8, 1921, but no part of it paid by the defendant, notwithstanding demand for 75% thereof, a demand repeated in 1925, and no point was made that the plaintiff was not within the statute of limitations.
Chief Justice Campbell, in the case of New River Collieries Co., 65 C. Cls. 205, 233, said:
“ These acts provide a method and procedure whereby the Government may be made to respond. It has been held that if the Government attaches purely formal conditions to its consent to be sued these conditions must be complied with and the words being in the statutes ‘ they mark the conditions of the claimant’s right.’ ”
The Supreme Court in the Houston Coal Co. case, 262 U. S. 361, 365, in discussing the 10th section of the Lever Act, a statute granting relief upon the same terms as the act of June 15, 1917, used this language:
“ The Lever Act was passed in view of the constitutional provision inhibiting the taking of private property for public use without just compensation. It vested the President with extraordinary powers over the property of individuals which might be exercised through an agent at any place within the confines of the Union with many consequent hardships. As heretofore pointed out, United States v. Pfitsch, 256 U. S. 547, by deliberate purpose the different sections of the act provide varying remedies for owners — some in the district courts and some in the Court of Claims. It reasonably may be assumed that Congress intended the remedy provided by each section should be adequate fairly to meet the exigencies consequent upon contemplated action thereunder and thus afford complete protection to the rights of owners.”
In this case, as previously observed, the Government did not at any time fix or decline to fix, notwithstanding continuing appeals to act,, the amount of compensation justly due the plaintiff. On the contrary, it was the Government’s act *208 which delayed the presentation of a suit; it was the consumption of time by the Government to consider the merits of the claim, and determine what to do, that suspended action and continued with the plaintiff a possibility of escaping litigation and payment of his claim. Surely it may not be disputed that the Government might lawfully have awarded this plaintiff just compensation in 1922 or 1925. It has long since been held by the Supreme Court that where Congress by an act extends to claimants against the Government a statutory remedy the pursuit of the statutory method is essential before resort to the courts. United States v. Taylor, 104 U. S. 216; United States v. Cooper, 120 U. S. 124; Rock Island Railroad Co. v. United States, 254 U. S. 141, 143.
The fact must not be overlooked that claims of the character here in suit were numerous and involved, not alone from the standpoint of fact but also with relation to their legal aspect. It was not until 1924 that the legal principles forming a basis for just compensation were finally settled, and inasmuch as the statutes intended relief and fixed a jurisdiction which might be invoked under the conditions of the statute, we are of the opinion that where the delay in action is to be attributable wholly to the act of the Government, in the consideration of the claim, the plaintiff may invoke the jurisdiction of the court within the statutory period, following the final judgment of the Shipping Board. The act of 1920 confirms this view. Congress employs these words: “As soon as practicable after the passage of this act, the board shall adjust, settle, and liquidate all matters arising out of or incident to the exercise by or through the President of any of the powers or duties conferred or imposed upon the President by any such act or parts of acts,” a decisive recognition of the necessity of granting time for the consideration of cases of this sort, and an unwillingness to circumscribe the period within which the board should act.
This case is governed by the decision of this court in the Luckenbach case, 64 C. Cls. 59. The findings, the verity of which admit of no contradiction, disclose that what the plaintiff possessed on the date of requisition were two execu-tory contracts for the construction of two Vessels of the de *209 scribed tonnage and design. The plaintiff had paid no part of the considerations and absolutely nothing had been done by the contractor towards their construction. Both contracts were executed during the war period and both were requisitioned within about two months after they were signed. The proof shows that the plaintiff had incurred an expense of $3,000 incidental to the procurement of the contracts, and this is the single item of out-of-pocket damage. The vessels to be constructed were not of unusual tonnage or design, nor the consideration for their building abnormally large. As this court said in the Luckenbach case (supra) :
“ We need not advert to a condition which everybody knows. However, one must have something to sell, for we may not close our eyes to the fact that a purchaser of a ship-construction contract on August 3, 1917, would look to the situation respecting the contract to be purchased and take into consideration the value of the Contract under existing conditions. The Supreme Court in the Brooks-Scanlon case enumerates with precision some of the factors going into the value and points out the factors a prudent purchaser would notice and observe before investing. Obviously a purchaser would be willing to pay more for a vessel partly or nearly completed than for one which existed on paper alone. What the owner had to sell in this case was an executory contract, a right which existed on paper, the performance of which depended absolutely upon contemporaneous and future conditions. We do not mean to say that the right and property of the owners were valueless. They did possess a substantial value. The Supreme Court, in the Brooks-Scanlon case, in pointing out certain express factors among others to be recognized in ascertaining just* compensation for the expropriation of that right and property, justly recognizes that the contract right is not to be measured by the terms of the contract itself .and the benefits therein conferred upon the owner but by all this and the state of affairs existing at the time of expropriation, which in the very nature of things must inevitably affect the procurement of that right.”
In the Brooks-Scanlon Corporation case (supra) the Supreme Court pointed out certain factors entering into just compensation in a case of this character, as follows:
“ The value of such ships at the time of requisition, and the then probable value of the time fixed for delivery, the contract price, the payments made and to be made, the time *210 to elapse before completion and delivery, the possibility that by reason of the Government’s action in control of materials, etc., the contractor might not be able to complete the ship at the date fixed for performance, the loss of use of money to be sustained, the amount of other expenditures to be made between the time of requisition and delivery, together with other pertinent facts, are to be taken into account and given proper weight to determine the amount claimant lost by the taking. (Minnesota Rate Cases, supra, 451; United States v. Chandler-Dunbar Co., 229 U. S. 53, 76; Boston Chamber of Commerce v. Boston, 217 U. S. 189, 195; Monongahela Navigation Co. v. United States, supra, 343), that is, the sum which will put it in as good a position pecuniarily as it would have been in ,if its property had not been taken. United States v. New River Collieries Co., supra, 343; Seaboard Air Line Ry. Co. v. United States, supra, 305.” (265 U. S. 126.)
The record herein precludes resort to many of the enumerated factors mentioned in the above quotation. Doubtless the plaintiff might have negotiated his contracts, for contracts were sold. The difficulty we encounter is the necessity of discriminating in cases where executory contracts exist and stand alone without additional facts to aid in fixing compensation. The possibility of the contractor complying with the contracts, as per their terms, is obvious; it could not have been accomplished. So that what the plaintiff had was two executory contracts to construct the vessels when the obstacles to performance were removed and performance possible. The loss of the plaintiff under all the circumstances of the case was minimized to practically a nominal amount. It is, we think, apparent that the plaintiff’s contracts, if offered for sale in the prevailing market, would have elicited prices largely less than in the cases disclosing a progress toward completion,, with materials available to complete and prospects of procuring a completed vessel more propitious. Considering the case in all its aspects and in view of the findings made, we think a judgment for $35,000 is fully compensatory. Judgment will be awarded the plaintiff for $35,000 and interest thereon at the rate of 6% per annum from August 3,1917, until paid. It is so ordered.
Sinnott, Judge; GreeN, Judge; Moss, Judge; and Graham, Judge, concur.