GpjeeN, Judge,
delivered the opinion of the court:
The controversy in this case arises out of the requisitioning in 1917 by the United States of the hulls of four steamships under construction by the Great Lakes Engineering Works and the contracts for their completion, whereby the plaintiff claims its predecessor in interest was deprived of the right to operate the steamships when completed on the initial voyage from New York to France and the profits that would have resulted therefrom by reason of which it was greatly damaged. As successor to Oriental Navigation Corporation, the plaintiff has brought this suit to recover the damages alleged to have been so sustained.
Summarizing the pleadings in the case, we find that in its original petition filed April 23, 1930, the plaintiff bases its right to recover on the transactions of a company known as Oriental Navigation Corporation to which it claims to be the successor. Two causes of action are set forth. In the first it is alleged that a company entitled Oriental Navigation Corporation entered into contracts about July 1917 with the Compagnie des Chemins de Fer Algeriens de L’Etat whereby the Oriental Corporation undertook to act as the agent of this railway for the purchase of three steel cargo-carrying ships under construction at the yard of the Great Lakes Engineering Works, Ecorse, Michigan, the three ships being designated as hulls Nos. 168,172, and 173; that acting as such agent it purchased the hulls and in consideration of the per- *572 formalice of its agreement the right to the possession and use of the vessels upon completion for one voyage from New York to France was granted by the railway company for the sole account and benefit of the Oriental Corporation.
As a second cause of action it was alleged in the original petition that the Oriental Navigation Corporation entered into a similar agreement with the Compagnie des Chemins de Fer de Paris a Lyon et a la Mediterranee in July 1917 whereby it undertook to act as agent for this railway company in purchasing a steamship under construction in the yard of the Great Lakes Engineering Works which was designated as hull No. 169. It was further alleged that as a consideration for the agreement the right to the possession and use of the vessel upon completion for one voyage from New York to France was granted by the railway company; that the Oriental Navigation Corporation carried out its agreement and thereby became vested with the right to the possession of said steamship designated as hull No. 169 upon completion, and the right to use the steamship for one voyage from New York to France for its sole account and benefit.
In both counts it is alleged that about August 8, 1917, while the steamships were in process of construction, the United States, through the United States Shipping Board Emergency Fleet Corporation, requisitioned and took for public use the four steamships referred to in the two counts and the contracts for their construction and completion together with the vested right of the Oriental Navigation Corporation to the possession and use of each vessel for one voyage from New York to France for its own account and benefit.
The petition further alleges that through successive mergers by which all the property of Oriental Navigation Corporation passed first to Oriental Navigation Company, then to The Oriental Navigation Company, and then to the plaintiff, Dawnic Steamship Corporation, the plaintiff became the owner of the claims of Oriental Navigation Corporation against the defendant arising out of the taking and requisitioning of its vested right to operate these steamships for one voyage each to France.
*573 In both counts it is alleged that about November 5, 1917,. Oriental Navigation Corporation filed with the United States-Shipping Board a claim asking just compensation for its. rights and property requisitioned and taken by the United States as recited above, and further stated that about April. 6, 1918, the Oriental Navigation Corporation at the request, of the United States Shipping Board Emergency Fleet Corporation agreed to hold its claims for just compensation in-abeyance until a settlement had been effected between the. Shipping Board and railways named for the rights and interests of the respective railway companies in the property thus-requisitioned by the United States. About September 22, 1926, the Shipping Board entered into an agreement with the . respective railway companies whereby their claims arising out of the requisitioning of the steamships were finally settled and adjusted.
It is further alleged that The Oriental Navigation Company, successor to Oriental Navigation Company, about August 1,1929, filed a petition with the United States Shipping-' Board requesting it to resume consideration of the claims in controversy; that the committee on claims granted a hearing on November 15, 1929, and the same day filed a report with the Shipping Board recommending that the Board decline to-resume consideration of the claims; and that about January 15, 1930, the Shipping Board approved the recommendation-of the committee and denied the claims.
November 22,1930, plaintiff filed an amended petition more-in detail than the first petition but making the same allegations, stating that Oriental Navigation Corporation agreed to act as the agent of the two French railway companies above ■ mentioned in purchasing the four hulls named and that in consideration of the performance of its obligations under the-agreement the railways each respectively granted to Oriental Navigation Corporation the right to the possession and use of the vessels so acquired for one voyage from New York to-' France.
February 6, 1932, plaintiff filed a second amended petition in four counts. The first count alleged in substance-that in 1917 Oriental Navigation Corporation purchased the- *574 bull and contract for tbe construction of a steamship designated as No. 172; that shortly after the same company agreed to sell the steamship to a French railway company and to deliver the vessel when completed to the purchaser in France. Each of the other three counts made similar allegations with reference to steamships designated as hulls Nos. 173,168, and 169, respectively; and that arrangements had been made for the use of each vessel on the voyage from New York to France for its own account and benefit.
The allegations of each count with reference to the requisition made by the defendant of these steamships were substantially the same as stated in the original petition and first amendment thereto and it was further alleged that the Oriental Navigation Corporation and the plaintiff, as its successor, were deprived of the title, possession, and use of said steamships and of the right to use them for a voyage to France, for which the plaintiff claimed just compensation.
The defendant in its answer says that the plaintiff’s action is barred by the statute of limitations and in argument contends that the evidence fails to support the allegations of the second amended petition but to the contrary shows that Oriental Navigation Corporation was not the owner of the ships at the time they were requisitioned by the defendant And under the final contract it had no possessory rights in them. Other defenses are set up in argument which we do not find necessary to consider.
We do not think it is necessary to set out all the ramifications of the various contracts and ownership interest which were connected with the construction of the steamships involved. There is an important matter of fact as to which the parties are in dispute and that is as to whether the plaintiff’s • predecessor, Oriental Navigation Corporation, purchased the ships for itself and thereafter delivered them to the French railway companies; or whether, acting as agent, it purchased the ships for the railway companies under an agreement that it should receive as its compensation the right to operate the ships on their initial voyage to France and receive the profits therefrom.
The findings of the commissioner of this court who heard the evidence and received the testimony offered are in accord- *575 anee with the latter statement set out above; that is, the effect of his findings is that Oriental Navigation Corporation purchased the hulls for the French railway companies, acting as their agent, under an agreement that it should receive compensation for so acting as stated above. Counsel for plaintiff strenuously contend that the findings of the commissioner are not supported by the evidence. We have examined the testimony with care and think the commissioner was amply justified in his conclusion. It would serve no useful purpose to recite the details of the evidence bearing on this question but we might call attention to the fact that the final contract in writing for the completion and delivery of the steamship in each case recognized one of the French railways as purchaser and Oriental Navigation Corporation as agent in the transaction. (See Finding 1.) Counsel for plaintiff argue that there is nothing to show that Oriental Navigation Corporation was authorized to act as agent and that in fact it did not so act but purchased the steamships for itself. Exhibits “L” and “M” which are attached to plaintiff’s second amended petition and offered in evidence show incontestably that the Oriental Navigation Company was authorized to and did act as agent in the purchase of hull No. 168 for the French railway with which it had direct transactions. Counsel for plaintiff call attention to some informal letters which might seem to indicate that the railway companies as to the other hulls were not the purchasers, but the final contract with the builders made after these communications were exchanged was the same in all cases; that is, that the Oriental Company was to act as agent in purchasing the ships and the railway companies were the purchasers. Moreover, if the Oriental Navigation Company was the purchaser and the railway companies did not become owners until the ships were delivered in France, there was no occasion to put in the contracts the provisions that the Oriental Company was to pay the expenses of the voyage from New York to France. There is no direct evidence of the authorization as to the other hulls, but taking the transaction as a whole and considering the acts of all the parties connected therewith, we think it is made plain that the railway companies were the purchasers and Oriental Navigation Cor *576 poration acted as an agent in negotiating the purchase. This is in substance and effect the allegation contained in the original petition and in the first amended petition, as we have shown above. It should be specially noted that both of these petitions were sworn to by the president of The Oriental Navigation Corporation who was an officer of Oriental Navigation Company and also president of the plaintiff corporation. He certainly was in a position to know the facts with' reference to the capacity in which his corporation had been acting in the transaction. The claims filed by Oriental Navigation Corporation with the Fleet Corporation were presented as in account with itself and as agents for the respective French railways. Two accounts were presented for each ship, one being an account of payments and expenses presumably by the railways, the other styled “proforma voyage account” and estimated the profit of a voyage, presumably the claim of Oriental Corporation. These were the only claims presented to the Fleet Corporation so far as the evidence shows. (See Finding 5.) In these accounts nothing was stated with reference to the ownership of the hulls. Apparently the effort was to combine the two claims without stating definitely the basis for recovery. A question arises here as to whether the cause of action stated in the second amended petition was ever presented to the Fleet Corporation, but we do not find it necessary to determine it.
It is now contended by counsel for plaintiff that the contracts for the purchase of the hulls made by Oriental Navigation Corporation as agents for the French railways (see Finding 1) were made only to present the appearance of a purchase by an alien, it being supposed that our Government would not requisition property of an alien even though it was located in the United States and controlled by our laws. It is difficult to understand how such an idea could have arisen but in any event the circumstances are such that the French railway companies must have known what Oriental Corporation was doing and the claims presented to the Emergency Fleet Corporation by the Oriental Corporation for itself and the railways recognized and affirmed the agency.
It is not necessary, however, that we should base the judgment rendered herein upon our finding with reference to the *577 agency as we think we should first consider whether plaintiff’s action is barred by the statute of limitations. For the same reason we do not discuss some disputed questions of fact with reference to payments and other matters which are immaterial if the statute of limitations applies.
Plaintiff claims to have commenced its action under provisions found in the Act of June 15,1917, c. 29, 40 Stat. 182, 183, as modified by the Merchant Marine Act of June 5,1920, c. 250, 41 Stat. 988, 989. But this, in our opinion, does not prevent the application of the general statute of limitations applicable to all cases commenced in this court.
This court has held that under the statutes referred to •above the claimant whose property had been requisitioned must first present his claim to the Emergency Fleet Corporation for a ruling thereon, and the question arises as to what •extent the procedure required would toll the statute of limitations.
The evidence shows that on May 8, 1923, while the Fleet Corporation was proceeding to consider the claims filed by Oriental Navigation Corporation, Oriental Navigation Company stated in writing to the Emergency Fleet Corporation that its claims for recovery of loss sustained by it arising out ■of the requisitioning by the United States of the four hulls, Nos. 168, 169, 172, and 173, were withdrawn without prejudice to any right which Oriental Navigation Company “may have”, and the Emergency Fleet Corporation accordingly eliminated these claims from its docket. (See Finding 9.)
July 2, 1923, the Oriental Navigation Company by an instrument in writing sold to The Oriental Navigation Company all its property of every character and description. (See Finding 10.) August 26, 1929, The Oriental Navigation Company petitioned the Shipping Board to resume consideration of the claims filed by Oriental Navigation Corporation. The claims were referred to a committee on claims of the United States Shipping Board which recommended that the board decline to resume consideration of the claim for the reason that more than six years had elapsed since it was withdrawn and more than twelve years since the claim originated. On January 15, 1930, the Shipping Board *578 adopted a resolution declining to resume consideration of tbe claim. (See Finding 15.)
The plaintiff contends that the statute of limitations did not commence to run until the Shipping Board had declined to resume consideration of its claims and in support of this contention cites the case of Smith v. United States, 67 C. Cls. 182. But the reasons for the court’s decision in that case do not exist in the case before us. In the case at bar there was nothing to prevent the plaintiff’s predecessor from pressing its claim to a conclusion before the Shipping Board in the first instance. On the contrary, the Shipping Board was proceeding with its consideration at the time it withdrew its claim. In the Smith ease, supra, the court said in its opinion that—
* * * it was the Government’s act which delayed the presentation of a suit; it was the consumption of time by the Government to consider the merits of the claim, and determine what to do, that suspended action * * *. We are of the opinion that where the delay in action is to be attributable wholly to the act of the Government, in the consideration of the claim, the plaintiff may invoke the jurisdiction of the court within the statutory period, following the final judgment of the Shipping Board.
In the instant case there was no delay attributable to the Fleet Corporation or the Shipping Board. The delay was wholly the result of plaintiff’s withdrawal of its claim and failing to resume prosecution of it until more than six years thereafter. The requirement that the claim must first be presented to the Shipping Board for consideration and determination did not authorize plaintiff to postpone the presentation of the claim to such a time as it should see fit to proceed. It is said in 37 C. J., sec. 324, pp. 953, 954, that—
Where plaintiff’s right of action depends upon some act to be performed by him preliminary to commencing suit, and he is under no restraint or disability in the performance of such act, he cannot suspend indefinitely the running of the statute of limitations by delaying the performance of the preliminary act; for it is not the policy of the law to put it within the power of a party to toll the statute of limitations; if the time for such performance is not definitely fixed, a reasonable time, but that only, will be allowed therefor.
*579 The statute of limitations is established to prevent the prosecution of stale claims when the opposing party may not be able to properly contest them on account of lapse of time. If a party who is required to do some preliminary act before commencing suit were permitted to take his own time to complete the act, the effect would be to exempt him from the statute of limitations. Such a rule, in our opinión, should not be, and is not the law. The courts universally hold that the general principles upon which the statute of limitations is founded must be preserved, but circumstances may modify its application. As stated above, where a preliminary step is required before suit is begun, a reasonable time will be granted therefor but only a reasonable time. For over six years after withdrawing the claim it had filed with the Fleet Corporation no action was taken by the plaintiff or its predecessor, and more than twelve years had elapsed since the claim originated. There is nothing to indicate that the Fleet Corporation, at the time of withdrawal of the claim, would not proceed with its consideration and determination if requested, and in any event it was the duty of the plaintiff to present and proceed with its claim with reasonable diligence. It could not extend the time by withdrawing its claim. As shown above, only a reasonable time will be allowed the claimant for the completion of acts which are a necessary preliminary to bringing suit. When the plaintiff and its predecessor failed to take any action for more than six years after the claim had been withdrawn and more than twelve years after it had originated, it was negligent, did not act within a reasonable time, and is not entitled to have the statute of limitations extended for its benefit. In fact, the plaintiff delayed so long that we think it might well be said that it has been guilty of laches in presenting its claim and its action defeated on that ground. It is, however, sufficient to say that the statute of limitations applies.
It is also argued on behalf of plaintiff that the second amended petition does not present a new action and merely pleads in a different form the same case as was presented in the original and first amended petitions. It is true that the measure of recovery is the same but this does not determine the nature of the action.
*580 We have seen that the ship hulls together with the contracts for their completion were requisitioned in 1917. The second amended petition was filed February 6, 1932, nearly fifteen years later. We think it is clear that the second amended petition upon which suit is now brought presents an altogether different basis for recovery in that it alleges that the plaintiff’s predecessor had purchased these hulls and the contracts for their completion and in effect was owner thereof at the time they were requisitioned; while the original petition and the first amended petition made no such claim of purchase and ownership but alleged as a basis for the action that the ships were purchased for the French railways by plaintiff’s predecessor acting as agent for them under a contract that it was to receive as compensation for its services the right to operate the steamships on their first voyage to France. The difference between the two causes of action will appear plainly when we consider the apparent reason for the change in pleading. Under the allegations of the original petition and the first amended petition, the defendant requisitioned the respective hulls and the contracts for their completion, and under the rule laid down in the case of Omnia Co. v. United States, 261 U. S. 502, the defense would be set up that the contract the plaintiff’s predecessor had giving the right to use and operate the ships on the first voyage to France was not requisitioned but merely frustrated, and that consequently plaintiff had no valid cause of action against the defendant. No such defense could be made to the second amended petition which alleged that the plaintiff’s predecessor had purchased the steamship hulls and the contracts for their completion prior to the time they were requisitioned and in effect that plaintiff’s predecessor was then the owner thereof. These allegations, if true, presented a basis for a valid cause of action.
It is a familiar doctrine that when a new and different-cause of action is set up by an amended petition filed after the statute of limitations has run, the statute applies in the same manner as if no prior petition had been filed.
We conclude that the cause of action stated in the second amended petition is barred by the statute of limitations and *581 this makes it unnecessary to consider the other defenses set up by defendant.
The plaintiff’s petition must be dismissed and it is so> ordered.
DEPENDANT’S COUNTERCLAIM
June 10, 1924, there was executed by The Oriental Navigation Company and by the defendant a general release covering the matters set up as a basis of defendant’s counterclaim.. (See Finding 26.) The defendant now contends that this agreement was obtained by fraud and is invalid. The fraud is claimed to have been shown by a communication from the Oriental Navigation Company to the Shipping Board dated May 24, 1921. (See Finding 25.) But the only statement of fact contained in this communication is in effect that the Oriental Company had been advised by its agents that the practice of using an official rate of exchange in computing commissions which had been followed was the customary and usual way; and that their agents, in support of this statement, submitted to them a certificate obtained from the Commercial Exchange of Buenos Aires. There is nothing to show that the Oriental Company had not been so advised. Moreover, we think the defendant which was carrying on a shipping trade with South America had every opportunity to know what the real fact was with reference to this matter of exchange in computing commissions. As against this, it is urged that the evidence shows that the president of Oriental Company and a member of the firm to which the commission was due had agreed upon computing the commissions on a different basis which would show that a certain amount was due the defendant. There is nothing, however, to show that this agreement was ever ratified by the firm of Dodero Hermanos, who would have been liable under it. We conclude that the fraud is not shown by satisfactory evidence and the counterclaim is not sustained. It is therefore ordered to be dismissed.
Williams, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this ca,se.