**N. V. PHILIPS' GLOEILAMPENFAB-RIEKEN and Hartford National Bank and Trust Company, Trustee Under Indenture, etc., et al., Petitioners,**

v.

**ATOMIC ENERGY COMMISSION and United States of America, Respondents.**

No. 17024.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 28, 1963.

Decided March 21, 1963.

404

Mr. Harry L. Brown, Washington, D. C., with whom Mr. Ellsworth C. Alvord, Washington, D. C., was on the brief, for petitioners.

Mr. Edward A. Groobert, Atty., Dept. of Justice, of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, for respondents. Acting Asst. Atty. Gen. Joseph D. Guilfoyle and Messrs. Joseph F. Hennessey, Gen. Counsel, Atomic Energy Commission, Sidney G. Kingsley, Asst. Gen. Counsel, Atomic Energy Commission, and Alan S. Rosenthal, Atty., Dept. of Justice, were on the brief for respondents. Mr. Jerry C. Straus, Atty., Dept. of Justice, also entered an appearance for respondents.

Messrs. David Ginsburg and Leonard N. Bebchick, Washington, D. C., filed a brief on behalf of the Commissariat a l'Energie Atomique, as amicus curiae.

Before FAHY, BASTIAN and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

The Atomic Energy Act[1] of 1946 declared the production of fissionable materials to be a Government monopoly. To accomplish this purpose, Section 11[2] of

1. 60 Stat. 755, amended by 68 Stat. 919, 42 U.S.C. § 2011 et seq.

2. Section 11 of the Act, 60 Stat. 768–770, 42 U.S.C. § 1811 (1946 Ed.), relating to patents and inventions, provided, inter alia:

"(a) PRODUCTION AND MILITARY UTILIZATION.

"(1) No patent shall hereafter be granted for any invention or discovery which is useful solely in the production of fissionable material or in the utilization of fissionable material or atomic energy for a military weapon. Any patent granted for any such invention or discovery is hereby revoked, and just compensation shall be made therefor.

"(2) No patent hereafter granted shall confer any rights with respect to any invention or discovery to the extent that such invention or discovery is used in the production of fissionable material or in the utilization of fissionable material or atomic energy for a military weapon. Any rights conferred by any patent heretofore granted for any invention or discovery are hereby revoked to the extent that such invention or discovery is so used, and just compensation shall be made therefor.

"(3) Any person who has made or hereafter makes any invention or discovery useful in the production of fissionable material or in the utilization of fissionable material or atomic energy for a mili-

tary weapon shall file with the Commission a report containing a complete description thereof, unless such invention or discovery is described in an application for a patent filed in the Patent Office by such person within the time required for the filing of such report. * * *

 * * * * *

"(e) COMPENSATION AWARDS, AND ROYALTIES.—

"(1) PATENT COMPENSATION BOARD. —The Commission shall designate a Patent Compensation Board, consisting of two or more employees of the Commission, to consider applications under this subsection.

"(2) ELIGIBILITY.—

 * * * * *

"(B) Any person seeking to obtain the just compensation provided in subsections (a), (b), or (d) shall make application therefor to the Commission in accordance with such procedures as it may by regulation establish.

"(C) Any person making any invention or discovery useful in the production of fissionable material or in the utilization of fissionable material or atomic energy for a military weapon who is not entitled to compensation therefor under subsection (a) and who has complied with subsection (a) (3) above may make application to the Commission for, and the Commission may grant, an award."

the Act revoked all existing patents useful exclusively in the production of fissionable materials, and prohibited the issuance of new patents insofar as they are useful for such purposes. In addition, it authorized the Government to utilize as necessary any other patent in the process of producing fissionable materials, without liability for infringement of such patents. Subsection (e) of Section 11 established a Patent Compensation Board to pass upon claims for *just compensation* made by the owners of patents revoked or used pursuant to the Act and claims to *awards* by developers of nuclear processes made unpatentable by the Act. The statute, however, was totally silent as to the time in which claims for awards or compensation had to be presented to the Patent Compensation Board.

▮▮▮▮ Petitioners seek review [3] of the order of the Patent Compensation Board dismissing their applications for just compensation for patents, licenses and other interests in patents revoked by the Act and for awards covering use of foreign patents and one domestic patent issued since the Act was passed. The Board held that all of petitioners' claims, filed February 9, 1954, were time-barred by the six-year period of limitation in 28 U.S.C. § 2401(a) which, according to the Board, began to run on these claims on the date the Act became effective, August 1, 1946. It also held that all of petitioners' claims, other than those arising from revocation of existing patents and the use of a patent issued subsequent to the

Act, were invalid as well for a variety of other reasons.

## I.

Since application of the time bar raised by 28 U.S.C. § 2401(a) would dispose of all of petitioners' claims, this issue should be first considered. Although the Act was [4] silent as to the time for filing claims for just compensation or for awards, Section 13(a) thereof did provide that if the *just compensation* claimant was dissatisfied with the Board's action on his claim, he could then file suit in the United States District Court or in the Court of Claims "in the manner provided by sections 24(20) and 145 [now § 2501] of the Judicial Code," and, as to *awards*, Section 11(e)(4) [5] provided that application for review of the Board's action could be made within 30 days to the United States Court of Appeals for the District of Columbia.

The Commission's position seems to be that, although the Act specifically made § 24(20),[6] now § 2401(a), applicable to filing suit after Board action denying a claim for just compensation, it somehow implied that this section is applicable as well to the filing of a claim with the Board itself, not only for just compensation, but also for an award for which a different period for judicial review is specifically provided. There is absolutely nothing in the legislative history to support this strange reading of the statute. The fact that Congress finally, by amendment in 1961,[7] provided a six-year statute of limitations for filing claims be-

3. The ultimate administrative responsibility for approving just compensation and award claims lies with the Atomic Energy Commission. 60 Stat. 772, as amended, 68 Stat. 955–956, 42 U.S.C. § 2239. In this case, the Commission refused to review the determination by the Patent Compensation Board, which had the effect of making it a final order. 10 C.F.R. § 80.61(e). This court has jurisdiction under 68 Stat. 955–956, 42 U.S.C. § 2239, and 64 Stat. 1129, as amended, 5 U.S.C. § 1032.

4. In 1961, a six-year statute of limitations for filing claims was provided. 75 Stat. 478, 42 U.S.C. § 2187(d).

5. The Atomic Energy Act of 1954 changed the review provisions of the 1946 Act as to just compensation and awards. Now judicial review as to both is by any United States Court of Appeals pursuant to 64 Stat. 1129, 5 U.S.C. §§ 1031–1042, and 60 Stat. 243, 5 U.S.C. § 1009. 68 Stat. 955, 42 U.S.C. § 2239(b). The filing of the claims with the Board here predated the passage of the 1954 Act.

6. 36 Stat. 1093, 28 U.S.C. § 41(20) (1946 Ed.).

7. 75 Stat. 478, 42 U.S.C. § 2187(d).

fore the Board persuades us that Congress itself realized that the Act was deficient with respect to a statute of limitations and provided one to operate prospectively.

■ The Commission argues that the filing of a claim with the Board is in effect the commencement of a "civil action" before a judicial body, thus bringing the filing within the language of § 2401(a) [8] and imposing the six-year limitation period running from the date "the right of action first accrues." 28 U.S.C. § 2401(a). But "civil action" as used in § 2401(a) is a term of art judicially and statutorily defined as one "commenced by filing a complaint with [a] court," not an executive board.[9] F.R.Civ.P., Rule 3. Moreover, under § 2401(a), as under 28 U.S.C. § 2501, when, as here, the claimant must first present his claim to an executive tribunal, the right of action does not accrue until the executive tribunal has acted on the claim.[10] United States v. Taylor, 104 U.S. (14 Otto) 216, 26 L.Ed. 721 (1881); Gibbs Corporation v. United States, 127 Ct.Cl. 280 (1954); Schaeffer v. United States, 86 F.Supp. 145, 114 Ct.Cl. 568 (1949); John Russell Smith v. United States, 67 Ct.Cl. 182 (1929).

■ Since the Act was deficient with respect to a statute of limitations for filing claims with the Board, we must, applying general principles of law and equity, determine the proper time bar in the premises. When a federal statute creating rights of action provides no time limit on the exercise of those rights, the period of limitation to be applied depends on the type of action. As to actions at law, the silence of Congress has

been interpreted to mean that it is the federal policy to adopt the local or general law of limitation applied in similar circumstances. See Rawlings v. Ray, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941); Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906); Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). Where the remedy created by the federal statute, silent as to the limitation on its exercise, is in equity, the equitable principle of laches provides the limitation. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

■ Ordinarily, a condemnation suit filed in court for compensation in which the value of the property condemned is to be fixed is an action at law. Kohl et al. v. United States, 91 U.S. (1 Otto) 367, 376, 23 L.Ed. 449 (1875). But see Louisiana Power & Light Co. v. Thibodaux City, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). However, where the question of compensation is to be determined in the first instance by a board, the action is "in the nature of an inquest * * *, and not a suit at law in the ordinary sense of those terms." Boom Co. v. Patterson, 98 U.S. (8 Otto) 403, 406, 25 L.Ed. 206 (1878). Consequently, here we would not be required to adopt the general law of limitation. Nor would we, under Holmberg, be required to apply the doctrine of laches since the action before the Board, by traditional concepts, is not equitable in nature. In the absence of guidance from either law or equity, we must fill the vacuum by resort to the doctrine of reasonableness, keeping in mind the limitation provided by Congress in analogous

---

8. 28 U.S.C. § 2401(a), in pertinent part, reads:

"Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. * * *"

9. The Commission cites United States v. New York, 160 U.S. 598, 16 S.Ct. 402, 40 L.Ed. 551 (1896), Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128

(1887), and United States v. Lippitt, 100 U.S. (10 Otto) 663, 25 L.Ed. 747 (1879), for the proposition that "a suit may be commenced before an executive department within the meaning of a statute of limitations concerning actions before a court." We do not so read those cases. Neither, apparently, does the Third Circuit. United States v. Utz, 3 Cir., 80 F. 848 (1897).

10. Compare 35 U.S.C. § 286.

situations, together with such considerations as undue delay, excusable neglect and prejudice from delay.

██ Under the Act the Government exercised its constitutional power of eminent domain. In the exercise of that power, it is required to render just compensation. U.S.Const., Amend. V. In our view, the right to just compensation should not be lightly regarded nor quickly denied, particularly to these petitioners, who, as the record shows, cooperated fully with the United States in its wartime effort to develop the military use of atomic energy. If we were to resort to an analogous statute here for a guide to limitation, obviously § 2401(a) would be that statute. But in the circumstances of this case, involving as it does property rights condemned by the United States, where the Atomic Energy Commission itself did not even name the membership of the board which was to fix the value of the property condemned until almost three years after it was taken, and did not until after almost two years provide regulations pursuant to the Act under which a proper application could be made for just compensation, consideration of time [11] alone cannot provide the answer. We should not approach the resolution of this problem myopically. We should not narrowly view the rights of petitioners whose property has been condemned. We cannot say that, under the circumstances disclosed by the record, these petitioners should have their right to just compensation and to an award pursuant to the Act cut off by a time bar of which neither Congress, the Commission nor the petitioners were aware.[12] We hold that, in the circumstances of this case, petitioners' claims were filed with the Board within a reasonable time.

## II.

We turn now to the alternative grounds assigned by the Commission for the denial of certain of petitioners' claims. Two groups of claims can be disposed of together. The first group of claims arises out of certain foreign patents owned by petitioners. The United States exported to foreign countries several nuclear reactors which infringed petitioners' patents in those countries. Petitioners claim that the Act revoked their right to sue the United States for such infringement, and that they are entitled to "just compensation" for deprivation of the right to sue. The second group of claims arises out of certain United States patents which had expired prior to the effective date of the Act, but which had been infringed by the United States before expiration. Again, petitioners assert that the 1946 Act deprived them of the right to sue and that they are entitled to "just compensation" in lieu thereof. The Commission rejected both groups of claims on the ground that the Board was not authorized to pay "just compensation" on such claims. We agree.

██ The Commission is authorized to pay "just compensation" only on claims arising under § 11(a), (b) and (d).[13] Those sections provide that certain types of patents shall not be granted in the United States and existing patents of those types are revoked. Petitioners' claims described above clearly do not come within these sections. Obviously, Congress cannot deny or revoke foreign patents. And domestic patents already expired are not susceptible of being denied or revoked.[14] Therefore, the Commission cannot consider these claims. Whether or not petitioners may assert an infringement claim based on

11. It should also be noted, as indicative of the attitude of the parties toward the importance of time, that the Commission's motion to dismiss these proceedings, filed September 15, 1954, was not granted by the Board until November 14, 1961.

12. Compare Anderson v. United States Atomic Energy Commission, 7 Cir., 313 F.2d 313 (1963).

13. The Commission is also authorized to pay "just compensation" for fissionable materials and the means of producing them seized under § 5(a) (2), (5), but these provisions are not in issue here.

14. Cf. Fletcher v. United States, 138 F. Supp. 279, 281, 133 Ct.Cl. 896 (1956).

these patents against the United States in some other forum need not detain us.[15] The Patent Compensation Board does not have jurisdiction over such claims.[16]

## III.

 Petitioners were also the owners of certain foreign patents which apparently were not known in the United States prior to the Second World War. During the war, however, in cooperation with the "Manhattan Project" which ultimately produced the atomic bomb, petitioners divulged the processes covered by those patents to the United States, and it is alleged that they were widely used. · Pursuant to § 11(e) (2) (C) of the Act, petitioners filed a claim for an award based on the divulgence of these processes. The Board rejected their claim on the sole ground that they did not file a report describing such processes with the Board within 60 days after passage of the Act, as required by § 11 (a) (3).

We believe the Board erred in applying this section, in the circumstances of this case, with such literalness. Section 11 (a) (3) provides, in pertinent part:

"Any person who has made * * * any invention or discovery useful in

the production of fissionable material or in the utilization of fissionable material or atomic energy for a military weapon shall file with the Commission a report containing a complete description thereof, unless such invention or discovery is described in an application for a patent filed in the Patent Office by such person within the time required for the filing of such report. The report covering any such invention or discovery shall be filed on or before whichever of the following is the latest: (A) The sixtieth day after the date of enactment of this Act * * *."

The provision that no report is necessary if the inventor makes application for a patent clearly indicates that Congress was primarily concerned with the disclosure of nuclear inventions to the Commission, or to the Patent Office, not with a mechanical reporting process. Here it is conceded, at least for the purpose of the motion to dismiss before the Commission, that the Commission had full knowledge of the processes and in fact utilized them widely. Under these circumstances, we must agree with the petitioners that the omission of the

---

15. See 28 U.S.C. § 1498. But see also 35 U.S.C. § 286.

16. Petitioners argue that, in a sense, the expired patents were still in effect in 1946 in that they would still form the basis for an infringement suit, and that the 1946 Act, by revoking all rights in patents, revoked the right to sue for infringement. The defect in this argument is that the right to sue for infringement does not depend on the continued vitality of the underlying patent. For example, the owner of a patent may sue for infringement of that patent which occurred while he owned it, even though he later sold it before bringing the suit. See Crown ,Die & Tool Co. v. Nye Tool Works, 261 U.S. 24, 40, 43 S.Ct. 254, 67 L.Ed. 516 (1923); United States v. Loughrey, 172 U.S. 206, 211–212, 19 S.Ct. 153, 43 L.Ed. 420 (1898); Moore v. Marsh, 74 U.S. (7 Wall.) 515, 19 L.Ed. 37 (1868).

Alternatively, petitioners argue that § 11 must be interpreted to include revocation of the right to sue for infringement

prior to the Act, citing a hypothetical situation in which the patent is still in effect on the effective date of the Act. They contend that Congress could not have intended, in this situation, that the patentee's claim be split, half to be determined in a suit for past infringement and half to be determined by the Commission based on future use. Therefore, they contend, their claim must be cognizable by the Commission. We agree with the Commission that the Act gives it authority to compensate only for the taking of the patent as of the effective date of the Act. Though this may indeed result in the splitting of claims, the limited jurisdiction of the Commission is quite clear from the plain language of the Act, and, assuming it is not, we find nothing to the contrary in the legislative history. Moreover, as shown above, the right to sue for infringement may be separated from the ownership of the patent. United States v. Loughrey, supra; Moore v. Marsh, supra.

report was harmless non-compliance.[17] To insist on useless, literal compliance here would tend to discourage the forthright disclosure to the Commission of future inventions useful in the advancement of this country's nuclear potential. Under the circumstances of this case, the Commission should not be allowed to seize upon this technicality to avoid a responsibility which the Congress recognized.

### IV.

Petitioners owned a non-exclusive license to utilize the so-called "Fermi" patent in the United States. They filed a claim for "just compensation" for the "taking" of this license on the theory that §§ 5 and 11 of the Act combine to deprive them of the right to utilize the patent. The Board dismissed the claim on the ground that the license was not a property right covered by § 11 of the Act. We agree with the Board, but some analysis of the nature of a non-exclusive license is necessary.

▆▆▆▆ If there were no patent system at all, anyone would be free to use any invention. A patent, however, gives one person the right to exclude all others.

This monopoly is the property right in the patent.[18] The patentee may grant exceptions to his monopoly in the form of an exclusive license or a non-exclusive license. An exclusive license gives the licensee (a) the right to use the patent free from an infringement suit, and (b) the right to exclude all others. A non-exclusive license, however, gives only the right to use the invention during the patent period.[19] Thus it confers no interest in the patent itself.

▆▆▆ Section 11, as we have shown, only revokes patents, and the Patent Compensation Board is allowed to pay just compensation only for such revocation. It is true that other sections of the Atomic Energy Act, particularly §§ 5 (a) (2), (3), have deprived petitioners of the right to utilize the process covered by the patent. But again, the Commission is authorized to pay just compensation only for takings under certain sections of the Act, none of which covers the taking of the right to engage in the production of fissionable materials. Such right to produce was not granted by the patent and was not taken by its revocation.[20]

17. Section 11(e) (2) (C) requires compliance with the reporting provisions of § 11(a) (3) as a condition to an award. As indicated in the text of this opinion, here there is substantial, if not literal, compliance with § 11(a) (3) which, in the circumstances of this case, we find sufficient. Fletcher v. United States Atomic Energy Com'n, 89 U.S.App.D.C. 218, 221, 192 F.2d 29, 33 (1951), cert. denied, 342 U.S. 914, 72 S.Ct. 361, 96 L.Ed. 684 (1952), is not to the contrary. There a report was filed, but the court emphasized that important to compliance with § 11 (a) (3) is complete disclosure of the invention or discovery. For the purpose of the motion to dismiss here, we assume complete disclosure as alleged. If, of course, the allegations of disclosure are not proved, the claim for an award should be denied.

18. Crown Die & Tool Co. v. Nye Tool Works, supra, Note 16, 19 S.Ct. at 36–37, 43 S.Ct. at 256–257, 67 L.Ed. 516; United Shoe Mach. Co. v. United States, 258 U.S. 451, 463, 42 S.Ct. 363, 66 L.Ed. 708 (1922).

19. " * * * In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent. Such a license grants to the licensee merely a privilege that protects him from a claim of infringement by the owner of the patent monopoly. * * * He has no property interest in the monopoly of the patent, nor any contract with the patent owner that others shall not practice the invention. Hence the patent owner may freely license others, or may tolerate infringers, and in either case no right of the patent licensee is violated. Practice of the invention by others may indeed cause him pecuniary loss, but it does him no legal injury. * * * " Western Electric Co. v. Pacent Reproducer Corporation, 2 Cir., 42 F.2d 116, 118 (1930). See also Moto Meter Co. v. National Gauge & Equipment Co., D.Del., 31 F.2d 994, 996 (1929).

20. Cf. Ellis, Patent Assignment and Licenses, §§ 397–402.

## V.

 Lastly, petitioners claim a right to an award based on certain United States patents which had expired before the United States utilized them. They rely on the literal language of § 11(a) (3) that the Commission may grant awards to any person "who has made or hereafter makes any invention or discovery useful in the production of fissionable material." They point out that they had made such an invention or discovery, and argue that § 11(a) (3) is not limited to future inventions.

The language quoted is ambiguous and might be read to include inventions covered by expired patents. However, reference to the legislative history quite clearly demonstrates that such was not the Congressional intent. The Senate Report accompanying this bill states: "To assure the Commission of *access to new inventions* * * * the bill requires that such inventions be reported to the Commission and creates a Patent Compensation Board with authority to make awards to inventors." [21] (Emphasis added.) The House Report states: "To take the place of the incentives offered by the patent system, it is proposed that in the case of an invention *which has not already been patented,* * * * [the inventor] may receive an 'award' for his invention." [22] (Emphasis added.) In order to qualify for an award, "the claimant must be unable to claim just compensation under § 11(a) because *he had* and has no patent covering his invention or discovery." (Emphasis added.) Fletcher v. United States Atomic Energy Com'n, 89 U.S.App.D.C. 218, 221, 192 F.2d 29, 33 (1951), cert. denied, 342 U.S. 914, 72 S.Ct. 361, 96 L.Ed. 684 (1952). Obviously, since the inventions claimed here *had* been the subject of patents, the Commission properly denied petitioners' claim for an award.

In summary, we conclude that the Commission erred in denying all claims on the ground that they were time-barred by 28 U.S.C. § 2401(a), and that the Commission should pass upon such claims as are not barred on other grounds.

Affirmed in part, reversed in part, and remanded.

---

21. S.Rep.No.1211, 79th Cong., 2d Sess., p. 26.

22. H.R.Rep.No.2478, 79th Cong., 2d Sess., p. 17. The quotation in text is taken from the minority statement, but was not controversial. See also statement of Congressman Elston, 92 Cong.Rec. 9485–9486 (1946).