ANGLO–COLOMBIAN DEVELOPMENT CO., Limited, v. STAPLETON.

Court of Appeals of District of Columbia.
Submitted March 9, 1927. Decided May 2, 1927.

No. 4501.

1. Limitation of actions ⬥➝29(1)—Action against executrix, if regarded as one on an account with deceased, held barred by three-year statute of limitations (Code, § 1265).

Action against executrix, if regarded as one on an account for moneys drawn by decedent as agent for plaintiff in management of mining properties, *held* barred by three-year statute of limitations (Code, § 1265).

2. Limitations of actions ⬥➝53(1)—Cause of action on account accrues at date of last item of account.

As respects running of statute of limitations, cause of action on an account accrues at date of last item of the account.

3. Executors and administrators ⬥➝437(3)— Action against executrix, if regarded as one for accounting for moneys received by deceased, held barred by laches.

Action against executrix, if regarded as one for an accounting for moneys drawn by deceased as agent for plaintiff in management of mining properties, *held* barred by laches arising from failure to sue during decedent's life, and executrix's practical inability to obtain facts necessary to defense.

4. Equity ⬥➝87(1)—In cases of concurrent jurisdiction, courts of equity consider themselves bound by statutes of limitations governing actions at law.

Courts of equity in cases of concurrent jurisdiction consider themselves bound by statutes of limitation governing actions at law.

**5. Equity ⊚⇒75—Agent In charge of mining property held not trustee with respect to money alleged to have been misappropriated, as affects defense of laches in action for accounting.**

Agent for development company, in charge of properties in another country and authorized to issue checks against company's bank funds for necessary expenditures, *held* not a trustee with respect to moneys alleged to have been misappropriated, in such sense that trust reposed in him would constitute bar to defense of laches in action against his executrix for accounting.

Appeal from the Supreme Court of the District of Columbia.

Action by the Anglo-Colombian Development Company, Limited, against Stella Hamilton Stapleton, executrix of the last will and testament of the estate of Daniel Casey Stapleton, deceased. Decree for defendant, and plaintiff appeals. Affirmed.

W. C. Sullivan, of Washington, D. C., for appellant.

G. E. Hamilton, J. J. Hamilton, G. E. Hamilton, Jr., Edmund Brady, and H. R. Gower, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. An appeal from a decree dismissing a bill for an accounting brought by appellant as plaintiff below. The following are the controlling facts as disclosed by the record:

The Anglo-Colombian Development Company, Limited, an English corporation, a subsidiary of the Consolidated Goldfields of South Africa, Limited, was formed for the purpose of acquiring land, options over mining rights and mining concessions, in Colombia, South America, and for operating the same especially for gold and platinum, and on March 17, 1911, the company entered into a written agreement with Daniel Casey Stapleton, since deceased, whereby Stapleton was appointed agent of the company in Colombia, with the stipulation that he should devote so much of his time and attention to the affairs of the company as the company's business should require. The employment was to begin on March 18, 1911, and was to continue until determined by either party by giving not less than six months' notice to the other party.

Immediately after the execution of the contract, Stapleton went to Colombia, and entered upon his duties as the company's agent, remaining there during the course of his employment, except for trips from time to time to England, the United States, and Panama. His duties as agent required the supervision of the plaintiff's operations at various points in Colombia, including remote regions in the interior, especially in obtaining land, stock in other companies, options on mineral rights, concessions from the government of Colombia, and the preservation and protection of all such properties and rights. The Colombian government at various times had granted to other parties rights to some of the properties which had been granted to the company, and it was one of Stapleton's duties to try to protect and enforce the company's rights under such circumstances.

The company had its headquarters in London, an office and representative in New York, and an office in Colombia, as well as a store and several camps there. Its active field operations were conducted in Colombia; other persons than Stapleton being in direct charge of the engineering operations, there being also an assistant manager, with a bookkeeper and other assistants or clerks, in the Colombian office, and the store and camps of the company. Stapleton's activities were such that he was seldom at headquarters.

The company's business in Colombia was financed, in part at least, through an account conducted in its name with a New York bank, and the company gave a power of attorney to Stapleton, empowering him to draw upon this account for any money for the time being standing to its credit there, and to hold and use the same for the purposes of the company. In the course of the business Stapleton issued checks upon the New York bank account in payment of labor, supplies, etc., and also at times for cash purporting to be for use by him in the company's business. These checks were returned, when paid, to the company's bookkeeper in Colombia, and the amounts were then charged by the bookkeeper to the proper accounts. In respect to the checks issued by Stapleton for the cash to be used directly by him, the bookkeeper would often be unable to make appropriate entries until instructed by Stapleton as to the uses made of the funds thus drawn. From the beginning of his employment Stapleton was remiss in making such reports, and the company repeatedly complained to him because of his failure to regularly report the uses made of such withdrawals. Until such withdrawals were explained to the bookkeeper they were charged to Stapleton's account, or to a suspense account pending explanations; these accounts continually showed large debit balances.

In the year 1916, the company passed from the control of the Goldfields Company to the South American Gold & Platinum Company, although the company's corporate existence was continued as before. The transfer was made as of November 30th of that year, and at that time the aforesaid account charged to Stapleton showed an overdraft of more than $40,000, and the suspense account about $20,000. No more checks were charged to Stapleton's account after the transfer, and no further instructions or explanations were given by him as to the uses made of the funds already charged. The new company demanded such explanations, but Stapleton, who had returned to this country, stated that he was unable to report upon the items without seeing the canceled checks, which were then in the office in Colombia. Soon afterwards informal notice was given to Stapleton of the ending of his employment as agent, and on March 26, 1917, formal written notice to that effect was served upon him. In the fall of 1916 Stapleton moved to Washington, D. C., and continued his residence here, except for occasional temporary absences, until his death on May 3, 1920.

Decedent's widow thereupon became executrix of his estate, and on December 10, 1920, the company, as plaintiff, filed its present bill in the lower court, alleging that the amounts of said debit balances, to wit, $40,000 and $20,000, had been misappropriated by Stapleton, and that he had thereby become a trustee for the company in those sums, and that all of the property and assets of his estate, or so much thereof as may be necessary for the purpose or appropriate to that end, should be impressed with a trust in favor of the company in lieu of the trust funds and properties thus misappropriated; praying also for an accounting, and that the executrix be required to pay over to the company the amount found in such accounting to be due to the company from decedent's estate.

The lower court, after hearing all the testimony introduced by plaintiff, dismissed the bill, finding as a fact that no fraud, deception, or concealment was shown to exist, and that plaintiff's cause of action was barred, both by the statute of limitations and laches.

[1, 2] We agree with the findings and conclusions of the lower court. If the action is regarded as one upon an account, it accrued at the date of the last item of the account, to wit, December 31, 1916, at which time the amounts of the debit balances were fully known to all the parties. 37 Corpus Juris, 865. This suit, however, was not filed until December 10, 1920, after the lapse of more than three years from the time when the cause had thus accrued. Under section 1265, D. C. Code, it is provided that an action at law upon an account shall not be brought after three years from the time when the right to maintain it shall have accrued. The statute provides for various exceptions and interruptions to the general rule, but none of them applies in fact to this suit. During the period from December, 1916, until Stapleton's death, he had his home in the District of Columbia, as was well known to the company, and at any time during that period suit could have been brought against him and service had upon him here.

[3, 4] If, on the other hand, the suit is considered as one in equity for an accounting, the same limitation applies in the absence of fraud or concealment. "Courts of equity in cases of concurrent jurisdiction consider themselves bound by the statutes of limitation which govern actions at law." Met. Nat. Bank v. St. Louis Despatch Co., 149 U. S. 436, 448, 13 S. Ct. 944, 948 (37 L. Ed. 799); Baker v. Cummings, 169 U. S. 189, 18 S. Ct. 367, 42 L. Ed. 711; Stearns v. Page, 7 How. 819, 12 L. Ed. 928.

"But, whatever may be the substantial merits of this case, it is very clear to us that there is one consideration which must dispose of it adversely to the appellants. The suit is for an accounting. It is a case where there is concurrent jurisdiction at common law and in equity. A plea of the statute of limitations would undoubtedly be a bar to the demand at common law. This statute must be equally held in equity as a bar to this proceeding." Morris, J., in Patten v. Warner, 11 App. D. C. 149.

See, also, Trust Co. v. Darling, 21 App. D. C. 132; Darling v. Birney, 54 App. D. C. 318.

The record does not sustain the plaintiff's charge of fraud or concealment, nor that a "new acknowledgment" of the debit balances as his debt was ever made or intended to be made by Stapleton. Moreover, upon the facts of the instant case, plaintiff's claim should be held to be barred under the doctrine of laches. In Hammond v. Hopkins, 143 U. S. 224, 12 S. Ct. 418, 36 L. Ed. 134, it is said:

"Where there has been no change of circumstances between the parties and no change with reference to the condition and value of the property, a court of chancery will run very nearly if not quite up to the measure of the statute of limitations as applied in analogous cases in a court of law. But where there has been a change of circumstances with reference to the parties and the property, and

still more where death has intervened, so that the mouth of one party is closed, and those who represent his interests are not in a predicament to avail of the explanations which he might have made, out of the charities of the law and in consideration of the fact that fraud is never to be presumed, but must always be proved and proved clearly, the courts limit very much, in such cases, the measure of time within which they will grant relief, because the presumption comes, in aid of the dead man, that he has gone to his account with a clear conscience."

See Mackall v. Casilear, 137 U. S. 556, 11 S. Ct. 178, 34 L. Ed. 776; Naylor v. Foreman-Blades Lumber Co. (D. C.) 230 F. 658; Humphreys v. Walsh (C. C. A.) 248 F. 414, 419.

That doctrine should receive especial consideration in this case, wherein decedent's widow, serving as executrix, is called upon to account for transactions occurring years past in a foreign country, of which it is hardly possible that she could possess any knowledge, and where she would be faced with great difficulty in acquiring such knowledge, and this in the face of the fact that the plaintiff could have brought the suit at any time within three years following the accrual of the cause, while decedent was still living, and openly had his residence in the same jurisdiction as that in which the present suit is brought.

[5] It is claimed by plaintiff that Stapleton was a trustee for the company in respect to the moneys alleged to have been misappropriated, and therefore that no limitation under the circumstances should bar its demand. We do not think that Stapleton was a trustee for the company in the sense imputed by plaintiff. 2 C. J. 425. And in no sense could the trust reposed in him be regarded as a bar to the defense of laches. 37 C. J. 795, 903, 909.

The decree of the lower court is affirmed, with costs.