## HILL et al. v. CHAMBERS.

### No. 5919.

Court of Appeals of the District of Columbia.

Argued Dec. 7, 1933.

Decided Jan. 15, 1934.

Austin F. Canfield, of Washington, D. C., for appellants.

W. Gwynn Gardiner, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellee formerly owned, subject to a mortgage of $40,000, the property known as 2009 Massachusetts avenue in Washington city. She had bought it in 1924 as an investment and had placed it in the hands of one William G. Lipscomb for sale or rent. Lipscomb had been her agent for several years, had managed her finances, and she had the fullest confidence in his integrity and ability. In the spring of 1925 Lipscomb proposed to her to exchange the equity in her property for the equity in certain other Washington property known as 1626–32 U Street Northwest belonging to appellants. The latter property was at that time subject to a mortgage securing a debt of $27,500. Lipscomb recommended the exchange and told appellee

the buildings alone on the property she was to acquire, and which were new, had a cost-value of $64,000. Appellee was a woman without business experience, or any knowledge of real estate values, and, acting on Lipscomb's urging, she made the exchange. Less than a week later appellants sold the property acquired from appellee for $25,000 over and above the $40,000 mortgage. Appellee, on the other hand, soon learned that the property she had got in the exchange was worth little, if any, more than the amount of the mortgage on it. She was alarmed but was reassured by Lipscomb, and she continued to hold it until sometime in 1929, when, for the first time, she learned that Lipscomb had not only received a broker's commission from her in the exchange transaction but had been paid a like commission by appellants. Immediately thereafter she tendered back to appellants the U street property and demanded they restore the status quo. This was refused and this suit was begun.

The trial judge made certain findings of fact, from which we quote as follows:

"That the plaintiff [appellee] in the fall of 1929 learned for the first time that her agent, the said Lipscomb, had received a commission from the defendants [appellants] for negotiating and carrying out the contract of exchange dated April 27, 1925; that Lipscomb did not disclose to the plaintiff that he was receiving a commission from Hill & Company at the time of the transaction, nor did he later disclose that fact to her; that whether or not there was any express agreement that Hill would also pay Lipscomb a commission for making the exchange of the properties, there was undoubtedly an understanding between them that this would be done. Hill & Company knew that Lipscomb was acting for Mrs. Chambers and having secretly purchased the services of the agent of Mrs. Chambers were responsible to her for his representations; that he knowingly misrepresented to her the respective value of the two properties."

We think there is evidence to support these findings. We have, therefore, a case in which an inexperienced woman unaccustomed to business dealings, totally unfamiliar with property values, and trusting implicitly in the representations of her agent, was induced to exchange property worth $25,000 for property worth nothing. In plain speaking, she was cheated to the extent of approximately $25,000. In such a case no one would contend the injured party was without remedy against the faithless agent, but appellants insist that, while that may be true, the evidence does not sustain the lower court's finding that Lipscomb was also appellants' agent or that the latter participated in his wrong; but, as we have said, we think it does in both respects.

■■■ There is no dispute that Hill & Co. paid Lipscomb in excess of $1,500 as commissions, and the evidence of Mrs. Chambers is that she knew nothing of this until she discovered it some four years later. The trial court accepted her evidence as true, and we cannot say it was not. There is likewise evidence that this payment to Lipscomb was understood and tacitly agreed to at the commencement of the negotiations and that it was in this secret role that he conducted the negotiations and succeeded by untrue statements in inducing appellee to part with her property. That is enough. In such a case a court of equity ought not to be slow to protect the victim. The applicable rule in such circumstances has been stated by us before. See Bradley v. Davidson, 47 App. D. C. 266; Rawlings v. Collins, 36 App. D. C. 72, 77; Fox v. Patterson, 43 App. D. C. 484. Condensed it amounts to this—that one who secretly employs the agent of another, as the result of which he secures an unfair advantage, shall be held accountable for the agent's wrong. Such conduct we have said repeatedly cannot be too strongly condemned, and, where it has occurred, the principal may repudiate the entire transaction and enforce reparation for losses sustained, and this not only against the unfaithful agent but against the beneficiary where the latter has participated in the wrong by making it to the interest of the agent to betray his trust.

The facts in the present case show just as clearly as in any of the cases cited the wrong of the agent, the connivance of the beneficiary, and the loss to the victim. The rule that in such circumstances the beneficiary should be required to disgorge is therefore applicable.

■■■ Nor do we think the question of laches, strongly urged by appellants, is in point. In the Bradley Case it was invoked, and there the period between the exchange of properties—for that too was a case of swapping equities—was two years. Here it is four. But the principle underlying each is the same, and in that case we said (47 App. D. C. at page 283), quoting from Halstead v. Grinnan, 152 U. S. 412, 417, 14 S. Ct. 641, 38 L. Ed. 495: "It [laches] is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that

it would be inequitable to permit the plaintiff to now assert them."

None of those conditions appears to be present in this case. Here counsel have stipulated that the difference in the value of the equities in the two properties when the exchange took place was $22,500, so that while appellee's property has been sold and may not now be restored to her, the amount of her loss is fixed and the decree of the court below for that amount seems to us to be correct and is affirmed with costs.

Affirmed.