### MORAN v. SCHLOSBERG.

### No. 6701.

United States Court of Appeals for the District of Columbia.

Decided April 5, 1937.

J. Bruce Kremer, George B. Springston, and Herbert M. Bingham, all of Washington, D. C., for appellant.

Alfred L. Bennett, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

## MARTIN, Chief Justice.

An appeal from a decree of the lower court dismissing appellant's amended bill upon motion of appellee.

On November 9, 1935, the appellant, hereinafter called the plaintiff, as receiver of the Park Savings Bank, filed an amended bill in equity in the lower court against appellee, Leo Schlosberg, as defendant, setting out the appointment and qualification of plaintiff as such receiver, and averring that the Park Savings Bank had been organized under the laws of the State of Alabama on the 30th day of August, 1909; that its charter had expired without renewal on the 29th day of August, 1929; and that plaintiff had been appointed and qualified as receiver of the bank by the Comptroller of the Currency on July 13, 1933, under authority of section 298, tit. 5, Corporations, of the 1929 Code of Laws for the District of Columbia. Thompson v. Park Savings Bank, 64 App.D.C. 308, 77 F.(2d) 955.

The plaintiff's amended bill also contained among others, the following averments, to wit:

"The plaintiff further avers, that, on to wit, the 16th day of December, 1931, the defendant, Leo Schlosberg, was the owner of 45 shares of stock of said Park Savings Bank and on said 16th day of December, 1931, said defendant left said certificates of stock with Robert S. Stunz, a purported vice-president and director of said bank, and on the 16th day of December, 1931 said Robert S. Stunz, through a mere bookkeeping entry on the books of the Park Savings Bank, and without realizing any proceeds in the transaction, illegally and wrongfully entered and gave a credit in the sum of $3,150.00 to the account of said defendant, Leo Schlosberg, in said Park Savings Bank and plaintiff avers that on, to wit, the 19th day of December, 1931, the said defendant withdrew $3,150.00 from his account in said Park Savings Bank, which withdrawal represented the amount of the illegal and wrongful credit which had been placed to his account in the bank by said Robert S. Stunz, vice-president and director thereof."

"The plaintiff further avers that there was no authority in law for the Park Savings Bank, prior or subsequent to August 30, 1929, to use its funds or the funds of its depositors for the purchase of its own stock from its stockholders, and plaintiff further avers that the placing of said credit of $3,150.00 to the account and the allowance of the withdrawal thereof by the defendant as aforesaid was illegal and ultra vires and a wrongful use of the depositors' money and immediately created and attached to said fund a trust for the benefit of the depositors and other creditors of said bank. Plaintiff further alleges that said illegal credit of $3,150.00 was made by reason of an alleged sale of said forty-five shares of Park Savings Bank stock left by said defendant with said Robert S. Stunz, purported vice-president and director of said bank, and plaintiff avers that said stock never was sold, that it was still registered in the name of the defendant on the books of said Park Savings Bank when the bank closed on March 6, 1933; that neither the board of directors nor the executive committee of the bank authorized the use of the bank's or depositors' funds for the purchase of said stock from the defendant and that the use of the bank's funds was an illegal and wrongful diversion of $3,150.00 of the assets of the bank's creditors. Plaintiff further avers that said transaction was concealed from the executive committee and board of directors of the Park Savings Bank by said Robert S. Stunz, who kept

**410**

said certificates of stock in his desk unknown to said executive committee and said board, and that the discovery of said transaction was not made until subsequent to March 15, 1933, within three years of the time of the bringing of this action.

"Plaintiff further avers that on December 16, 1931 said Park Savings Bank was, and ever since has been and now is wholly insolvent in that its assets were and now are insufficient to meet its liabilities and plaintiff further avers that the withdrawal of $3,150.00 on December 19, 1931 by the defendant was an illegal and preferential withdrawal and payment which wrongfully preferred the defendant over the creditors of the insolvent Park Savings Bank."

Plaintiff further averred that after his appointment as receiver and prior to the commencement of this action he demanded the return of the sum of $3,150 aforesaid from defendant, but no part of the same was returned to plaintiff; and that plaintiff has no plain, adequate, and complete remedy at law for the recovery thereof, and therefore invokes the aid of this court of equity on behalf of the depositors and creditors of the insolvent Park Savings Bank.

Wherefore plaintiff prayed for an accounting by the defendant of the sum of $3,150 aforesaid as a trust fund, and that defendant be ordered and required by the court to return and pay over to the receiver such sum with interest thus wrongfully withheld by the defendant.

The defendant filed a motion to dismiss the amended bill of plaintiff on the following grounds, to wit: First, that it fails to state a cause of action in equity inasmuch as it shows on its face that the plaintiff has a full, adequate, and complete remedy at law; second, that it fails to state a cause of action against this defendant, inasmuch as no allegation is made therein that defendant acted either with actual or imputed knowledge that the transaction alleged was other than a legal one, in so far as he was concerned; and, third, that it shows on its face that the fund herein involved was paid to the defendant more than three years prior to the filing of the suit herein, and therefore the present suit is barred by the statute of limitations in force in the District of Columbia.

After hearing duly had the court sustained the motion upon the grounds therein set out and dismissed the amended bill of plaintiff, whereupon plaintiff brought this appeal.

█ We are of the opinion that the decision of the lower court was correct, and that the motion to dismiss the amended bill was rightly sustained on each of the grounds set out therein.

The allegations of the amended bill are indefinite. It is stated therein that the defendant "left" his certificates of stock with Stunz, and that on the same day Stunz entered a credit of $3,150 on the books of the bank in favor of the defendant although no deposit had actually been made of that amount with the bank, and that a few days later the defendant withdrew that sum from the bank. This allegation fails to state the terms of the arrangement whereby the defendant left the stock with Stunz, whether there was a sale thereof to Stunz or a sale to the bank through Stunz as vice president, or a delivery of the stock to Stunz with authority that he might sell it to any obtainable purchaser. It appears from the subsequent allegations of the amended bill that Stunz simply retained the stock in his own possession, inasmuch as the certificates were found later in his desk, and the entire transaction was unknown to the other officers of the bank. In any event it seems clear that Stunz took the stock and kept it and paid defendant for it out of the money of the bank, and that the defendant, so far as appears, was entirely ignorant of Stunz's wrongful conduct, and was wholly innocent of any intention to obtain the money of the bank wrongfully. The transaction therefore, apparently, amounted simply to a misappropriation by Stunz of the sum of $3,150 which he paid to the defendant for defendant's stock.

█ If it be held on these facts that the defendant thereby became indebted to the bank for the money which Stunz unlawfully paid to him for his stock, an action immediately accrued in favor of the bank against the defendant for the recovery of the money. This action was maintainable at law and under the authorities it became barred by the statute of limitations by the lapse of three years following the transaction. Section 1265, D.C.Code (D.C.Code 1929, T. 24, § 341); Burrows v. Niblack (C.C.A.) 84 F. 111. The appellant cannot avoid this conclusion by describing the misappropriated money as a trust fund when

received by the defendant, for equity follows the law in such cases and the limitation provided at law would be enforced in equity.

In Hurdle v. American Security & Trust Co., 59 App.D.C. 58, 32 F.(2d) 954, 955, we said: "It is an established principle of equity that in cases of concurrent jurisdiction over a right of action, courts of equity consider themselves bound by the statutes of limitation which govern courts of law in like cases." See also: Curtis v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L. Ed. 222; Hayden v. Thompson (C.C.A.) 71 F. 60.

The averments of plaintiff that "on December 16, 1931, the Park Savings Bank was, and ever since has been, and now is wholly insolvent in that its assets were and now are insufficient to meet its liabilities," and the averment of plaintiff that the payment of $3,150.00 to defendant on December 19, 1931, was an illegal and preferential withdrawal and payment which wrongfully preferred the defendant over the creditors of the insolvent Park Savings Bank, are not controlling in this case inasmuch as the payment was not made in contemplation of the insolvency of the bank, nor had the bank committed any act of insolvency at the time.

The decree of the lower court is affirmed.

GRONER, J., concurs on the point that the statute of limitations defeats recovery.