**MOUNT VERNON MORTGAGE COR-PORATION et al., Appellants,**

v.

**The UNITED STATES as Parens Patriae, by its ATTORNEY GENERAL, et al., Appellees.**

**NATIONAL HOME LIBRARY FOUN-DATION and Fannie Sessions Mittell, Appellants,**

v.

**The UNITED STATES as Parens Patriae, by its ATTORNEY GENERAL, et al., Appellees.**

**Nos. 12705, 12707.**

United States Court of Appeals District of Columbia Circuit.

Argued April 23, 1956.

Decided July 5, 1956.

Petitions for Rehearing In Banc Denied Sept. 11, 1956.

Mr. Louis M. Denit, Washington, D. C., with whom Messrs. Thomas S. Jackson, Martin R. Fain, and Richard A. Bishop, Washington, D. C., were on the brief, for Mount Vernon Mortgage Corp., et al.

Mr. Warren E. Magee, Washington, D. C., with whom Mr. William J. Bulow, Jr., Washington, D. C., was on the brief, for Nat. Home Library Foundation and Fannie Sessions Mittell.

Mr. Morton Hollander, Atty., Dept. of Justice, with whom Mr. Leo A. Rover, U. S. Atty., at the time brief was filed, and Messrs. Samuel D. Slade and Richard M. Markus, Attys., Dept. of Justice, were on the brief, for appellees. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellees.

Before EDGERTON, Chief Judge, and BAZELON and BASTIAN, Circuit Judges.

EDGERTON, Chief Judge.

The United States as *parens patriae* sues to rescind certain transfers of shares of stock in the Longfellow Building Corporation. The transfers were made by trustees of the National Home Library Foundation, a charitable corporation organized in the District of Columbia. From a judgment in favor of

the United States for some of the shares and some dividends, the defendants appeal. They contend among other things that the suit is barred by laches and by a three-year statute of limitations, D.C. Code 1951, § 12–201.

■ Though the transfers were made several years ago, it is not clear that there was unreasonable delay on the part of the United States in bringing this suit. If the plaintiff were a private person, the statute of limitations might be a bar. Moran v. Schlosberg, 67 App.D.C. 163, 165, 90 F.2d 408, 410. But charitable trusts are "favorites with courts of equity." Ould v. Washington Hospital, 95 U.S. 303, 313, 24 L.Ed. 450.

The United States is not suing on behalf of particular beneficiaries, to enforce a "private right, which might have been asserted without the intervention of the United States at all." See United States v. Beebe, 127 U.S. 338, 346, 8 S.Ct. 1083, 1088, 32 L.Ed. 121. "A suit for the enforcement of a charitable trust cannot be maintained by persons who have no special interest in the enforcement of the trust. The mere fact that as members of the public they benefit from the enforcement of the trust is not a sufficient ground to entitle them to sue * * *." Restatement, Trusts, § 391, comment d; cf. comment c (1935). Since the beneficiaries of the National Home Library Foundation are a practically unlimited and wholly indefinite group of persons, unless the United States or the Attorney General can sue to prevent the Foundation's property, which has been dedicated to a public purpose, from being diverted to private profit, no one can sue. This makes the suit analogous to one brought to enforce a public right, and closely analogous to one brought to enforce a right of an Indian tribe. Neither statutes of limitations nor laches apply to suits of either sort. See United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L. Ed. 1283; Board of Commissioners v. United States, 308 U.S. 343, 351, 60 S. Ct. 285, 84 L.Ed. 313; United States v. Minnesota, 270 U.S. 181, 196, 46 S.Ct. 298, 70 L.Ed. 539.

We think the court's findings of fact are not clearly erroneous. We have considered appellants' other contentions and find no error affecting substantial rights.

Affirmed.

BASTIAN, Circuit Judge (dissenting).

While there was very substantial evidence to the contrary, I am not prepared to say that the findings of the trial court (except as hereinafter noted) in support of the allegations of the complaint were clearly erroneous. Rule 52(a), F.R.Civ. P., 28 U.S.C.A. Accordingly, they must be accepted.

I think too that there is considerable doubt that the Foundation was a charity in the true sense of the word; but, again, I cannot say that the findings of fact on this point were clearly erroneous.

There is also some question in my mind as to whether or not the present case should have been dismissed because of lack of indispensable parties. The judgment of the court removes as trustees two persons who were not parties to the suit and against whom, of course, no relief could or should have been granted. However, it is doubtful that the appellants are in position to claim prejudice to them on this account.

I do not believe that the issues in this case are *res judicata* because of the District Court's holding in the earlier case of Mahoney v. National Home Library Foundation, Civil Action No. 1979–50, although it closely approaches that case. There Judge Tamm dismissed the case on the ground of laches, but the issues and parties were not the same. It is true that the United States Attorney, as *parens patriae*, was a party to that suit but the action against him was dismissed voluntarily.

Be all this as it may, I think the case should be reversed because any claim was barred by limitations and by laches, and should have been dismissed on either or both of these grounds.

It is to be noted that in these cases no fraud has been found by the District Court. While appellees argue that there was but a short lapse of time between the "discovery" of the "fraud" [1] and the institution of the present proceedings, the fact is that although fraud is alleged in the complaint there is no such finding. The most the trial court found was that the transfer of the stock was "for a shockingly inadequate consideration." The court, in its conclusions of law, held [128 F.Supp. 636]:

"6. The trustees of the Foundation occupied a fiduciary relationship to it and its unknown beneficiaries. In negotiating the sale of 833 shares of the Longfellow stock in January, 1943, to Mt. Vernon Mortgage Corporation, said trustees failed to inform themselves of the value of the stock and failed to exercise the caution, care and skill which a man of ordinary prudence would exercise in dealing with his property. Due to their failure to perform their duties, the trustees transferred said 833 shares of stock for a shockingly inadequate consideration, and they thereby breached their trust." [2]

The record discloses that the main factor in the organization of the Foundation in 1932 was Mr. Sherman F. Mittell, who died in 1942. Upon his death, all interest in the Foundation ceased and operations thereof were discontinued.

For eight years thereafter no action was taken by any one and, in the meantime, prior to the filing of this cause, four witnesses familiar with the transaction died; the records of the Foundation, with few exceptions, had been destroyed; the memories of witnesses had, naturally, faded; and it is obvious that the appellants' defense has been prejudiced by the long delay. In addition, the positions of the appellants have been prejudiced in that they have paid income taxes on the dividends received by them on the stock purchased by them and, as to some if not most of these, it is too late to claim refund.

In my opinion the statute of limitations applies and, even if the statute does not apply, the action is barred by laches. While it is true that the suit is filed in the name of the United States as *parens patriae* by the Attorney General and by the then Attorney General of the United States, [3] this suit is not one in which the United States is a party in its own right as no property rights of the United States are in any way involved. If the United States had been a party in its own right, it is probable that neither the statute of limitations nor laches would apply.

It would seem to me that the reasoning of the House of Lords in the case of St. Mary Magdalen College v. Attorney General, 6 H.L.C. 189, 10 Eng.Rep. 1267, (a somewhat similar suit) is particularly applicable. There the House of Lords said:

---

1. Appellees' position is that they did not know of the sales complained of until the filing of a prior action by an individual with a claim against the Foundation. That action was dismissed on the ground, among others, of the statute of limitations. As will hereinafter appear, the Foundation ceased operations in 1943, and at that time the beneficiaries of the trust (whoever they might be) could have taken action, as could the *parens patriae*. I think the statute began to run at the time the sales were made.

2. Two of the three trustees against whom these findings and conclusions were directed, who are held to have renounced their offices thereby and who are to be removed, were not even parties to the suit. There is no finding of a fiduciary relationship to the Foundation by the appellants.

3. The suit was filed by The United States of America as *Parens Patriae*, by its Attorney General and J. Howard McGrath, Attorney General of the United States, in behalf of the unknown beneficiaries of the National Home Library Foundation, *Plaintiffs*. No one was substituted in Attorney General McGrath's place on his resignation, nor in the place of his successor when his successor was in turn succeeded by the present Attorney General.

"The statute [of limitations] runs against the Attorney General in cases of this kind, for he comes in, not in his own right or that of the Crown, as such, but as the representative of persons in respect to whose rights the Crown possesses a fiduciary character, and has a fiduciary duty to discharge. \* \* \*"

The House of Lords applied the statute of limitations and not laches to the suit of the Attorney General and held the suit barred because brought too late.

This rule as to the application of the statute of limitations is reinforced by the fact that here the trial court has granted not only equitable relief but legal relief (money judgment) as well. Cf. Filson v. Fountain, 1952, 90 U.S. App.D.C. 273, 197 F.2d 383.

In fairness to the appellants it should be pointed out that the evidence did not, despite the trial court's ruling, justify a finding that the transactions "were not conducted at 'arm's length'." There was no fiduciary relation between the Foundation and Mt. Vernon and its officers. The court concluded that the purchaser had notice of the breach of trust of the trustees of the Foundation, but I see neither breach of trust nor notice. At most, even if this can be said, the evidence disclosed bad judgment on the part of the trustees; but it took the passage of years, a rising real estate market, and refinancing to develop even this. It is to be noted that the court held a transaction involving 667 shares of the Longfellow stock purchased by Mt. Vernon for $5,000.00 [4] in April 1940 to be on an adequate consideration.

I would reverse the judgment of the District Court and direct the dismissal of the suit.

4. The 833 shares forming the basis of the appeal were purchased in January 1943 for $27,905.50. While it is true that the building was completed in 1941, nevertheless it was a loft type building which would require hundreds of thousands of dollars to convert into a normal

office building if the tenant removed. Beginning in July 1942, renewals of the principal lease on the building were from year to year, with the principal tenant (a government agency) having the right to terminate on a thirty-day notice.