Edward SAFFRON, Appellant,

v.

DEPARTMENT OF THE NAVY et al.

No. 75–1794.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 1976.

Decided July 1, 1977.

---

Betty J. Clark, Washington, D. C., for appellant.

Mark H. Tuohey, III, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, John R. Dugan, and James F. McMullin, Asst. U. S. Attys., Washington, D. C., at the time the brief was filed, were on the brief, for appellees.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

Opinion concurring separately filed by McGOWAN, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The pivotal question confronting us is whether the six-year limitation imposed generally by 28 U.S.C. § 2401(a)[1] on litigation brought against the United States is applicable to the suit of a discharged federal employee for restoration to his job as well as to his claim therein for damages. We hold that the effort in each respect was an action against the United States within the contemplation of that section and consequently is barred in full.

I

On November 26, 1965, the Department of the Navy terminated appellant's employment as a civilian aircraft engine mechanic.[2] Administrative remedies by which he

---

1. Quoted in text *infra* at note 23.

2. Having occupied the position since April 6, 1955, appellant sustained a job-related injury

challenged his dismissal were exhausted on April 26, 1966, when the Board of Appeals and Review of the Civil Service Commission upheld the Navy.[3] On February 4, 1975—more than eight years and nine months later—appellant filed in the District Court for the District of Columbia the lawsuit in which this appeal is taken.[4] Appellant sought a judgment setting aside his removal from federal service, reinstating him in his job, and awarding damages, including backpay and other employment benefits.

Appellees, mainly the Department of the Navy,[5] moved to dismiss the suit on the ground that relief was barred by Section 2401(a) and the conventional doctrine of laches. The District Court granted the motion, concluding that monetary recovery was foreclosed by the statute and that job-restoration was precluded by undue prejudicial delay.[6] Appellant argues that during the lengthy interval between the final administrative decision and institution of suit, extensive efforts on his part to obtain remediation tolled the limitation period and negated the defense of laches.

That appellant actively engaged in other endeavors to rectify his situation seems to be conceded. He wrote many letters and made numerous visits to members of the business, governmental and political communities, complaining of his dismissal and soliciting assistance. He also contacted more than a dozen attorneys in efforts to maintain legal representation, often without success.[7] In November, 1967, he brought in the District Court for the District of Rhode Island a suit under the Freedom of Information Act[8] for access to records pertaining to his discharge,[9] and eventually obtained an order that all available data be turned over to him.[10] Appellant states that subsequently he tendered a second complaint, *pro se,* to that court but that it was "rejected by the clerk, who suggested [that he] file the suit in" this circuit.[11]

On November 24, 1971, appellant applied *pro se* to the District Court for the District of Columbia for a writ of mandamus to the Secretary of Labor and others, but suffered a dismissal without prejudice.[12] On February 22, 1972, he asked leave to amend his complaint but was refused;[13] continuing *pro se,* he then opted for summary reversal by this court. That, on June 2, 1972, the court denied, and instead granted the Navy's motion for summary affirmance.[14] As we have stated, the instant litigation was commenced on February 4, 1975, and the appeal contests the District Court's rul-

on September 16, 1964, while lifting a torque bar. He was later assigned to other duty, for which the Navy deemed him medically fit, but which he refused to perform on the ground that his health would be endangered.

3. Appellant was represented throughout the administrative proceedings by union attorneys who, several weeks after completion of the administrative process, informed him that after thorough evaluation of his file they were "of the opinion that proceeding into court would certainly have no useful purpose or be beneficial to you." Appellant's Appendix (App. I) 20.

4. *Saffron v. Department of the Navy,* Civ. No. 75-0163 (D.D.C.).

5. Remaining appellees are the Secretary of the Navy, the Secretary of Labor, the Civil Service Commission and one of its members.

6. *Saffron v. Department of the Navy, supra* note 4 (order of May 15, 1975).

7. But see note 3 *supra* and notes 9, 15 *infra.*

8. Act of Sept. 6, 1966, Pub.L. No. 89–554, 80 Stat. 383 codified as amended, 5 U.S.C. § 552 (Supp. V 1975), further amended by Act of Sept. 13, 1976, Pub.L. No. 94–409, § 5, 90 Stat. 1247.

9. Appellant was represented by counsel in that case.

10. *Saffron v. Wirtz,* Civ. No. 3287 (D.R.I. Oct. 27, 1969) (unreported).

11. App. I 6.

12. *Saffron v. Hodgson,* Civ. No. 2352–71 (D.D.C.) (order of Fed. 10, 1972) (unreported). The dismissal was for failure to comply with Fed.R.Civ.P. 8.

13. *Id.* (order of Feb. 29, 1972) (unreported).

14. *Saffron v. Hodgson,* No. 72–1386 (D.C.Cir.) (order of June 2, 1972) (unreported).

ing that appellant's claims were time-barred.[15]

## II

■ Congress has not seen fit to enact a comprehensive array of time limitations on the enforcement of federally-created rights.[16] For relatively few, Congress has prescribed limitation periods, and when it has done so its mandate, of course, must be obeyed.[17] When, however, Congress has not spoken, the applicable limitation traditionally has depended upon the nature of the litigation,[18] a treatment inherited from the days when the common law and equity jurisprudence flourished as separate doctrinal systems. For actions at law, congressional silence was accepted as a reflection of federal policy to abide nonfederal statutes of limitation applicable in analogous situations;[19] when, however, the relief sought was purely equitable in character, the doctrine of laches—peculiarly a creature of equity[20]—measured timeliness of the suit.[21] This distinction has survived four decades of merger of common law and equity procedure in the federal courts.[22]

Suits against the United States—at least some of them—however, comprise one of the special categories of litigation for which Congress has erected a time barrier. Section 2401(a) specifies that "[e]very civil action commenced against the United States shall be barred unless a complaint is filed within six years after the right of action first accrues."[23] This mandate is but an exertion of the undoubted congressional power to impose restrictions upon the institution of litigation authorized against the Federal Government.[24] The critical inquiry, then, relates to the extent to which Section 2401(a) impacts either or both of appellant's prayers for relief.

## III

■ Dismissal, on the basis of Section 2401(a), of appellant's claim for a monetary judgment, we are satisfied, was eminently correct. On this branch of the case appellant sought damages, including salary and other financial benefits lost by reason of the termination of his employment. Relief of that character would have been possible only by resort to the federal fisc, and the effort in court to obtain it, nominally against named federal officials, was in every sense a "civil action commenced against

15. Appellant has been represented by counsel throughout the instant case.

16. The right appellant asserts—freedom from unwarranted interference with his employment—depends completely on federal law for its existence and content. Consequently, we are unconcerned with nonfederal statutes of limitation save possibly as one or more may be absorbed in the interstices of federal enactments. See note 19 *infra* and accompanying text.

17. "If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive." *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743, 746 (1946).

18. *E.g., id.* at 395–396, 66 S.Ct. at 584, 90 L.Ed. at 746–747; *N. V. Philips' Gloeilampenfabrieken v. Atomic Energy Comm'n,* 114 U.S.App. D.C. 400, 405, 316 F.2d 401, 406 (1963).

19. *E.g., Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295, 302 (1975); *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 701–705, 86 S.Ct.

1107, 1110–1113, 16 L.Ed.2d 192, 197–199 (1966); *Holmberg v. Armbrecht, supra* note 17, 327 U.S. at 395, 66 S.Ct. at 584, 90 L.Ed. at 746–747.

20. *E.g., Mount Vernon Savs. Bank v. Wardman,* 84 U.S.App.D.C. 343, 344, 173 F.2d 648, 649 (1949); *Hill v. Chambers,* 63 App.D.C. 36, 37–38, 68 F.2d 781, 782–783 (1934).

21. *E.g., Holmberg v. Armbrecht, supra* note 17, 327 U.S. at 395–396, 66 S.Ct. at 584, 90 L.Ed. at 746–747; *N. V. Philips' Gloeilampenfabrieken v. Atomic Energy Comm'n, supra* note 18, 114 U.S.App.D.C. at 405, 316 F.2d at 406. But see Parts IV, V *infra.*

22. See cases cited *supra* notes 17–21.

23. 28 U.S.C. § 2401(a) (1970). The section further provides that "[t]he action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases."

24. See *Szyka v. United States Secretary of Defense,* 525 F.2d 62, 65 (2d Cir. 1975).

the United States." [25] By the terms of the statute, the six-year limitation period began to run from the time the "right of action first accrue[d]" [26]—certainly no later than final administrative disposition of appellant's claim on April 26, 1966 [27]—and the record does not support an argument that compliance with Section 2401(a) was frustrated by obstructionism on the part of the Navy.[28] The filing of the complaint in the instant litigation on February 4, 1975, came too late for a money award.[29]

Appellant's endeavors to secure reinstatement to his job, however, generates somewhat more difficulty, which the parties' argumentative approach has accentuated. In this court, the briefs on both sides, while postulating monetary recovery as a matter implicating Section 2401(a), have treated reinstatement solely as a problem of laches. Accordingly, the litigants, like the District Court, have focused exclusively on disputes over the reasonableness of the delay in instituting the case before us and resulting prejudice to the Navy. Despite the relevance of those considerations on an issue of laches had appellant's action been brought within the six-year period,[30] no one has satisfactorily explained why Section 2401(a) does not itself bar reinstatement as well as the monetary demand. Our own research— which is now to follow [31]—has demonstrated that the parties' analysis is faulty; that appellant's reinstatement bid, notwithstanding its equitable nature, is intercepted by Section 2401(a), and consequently also is barred.

## IV

■ Even prior to unification of district-court proceedings in one form of action,[32] it had become well settled that whenever the courts of law and equity possessed concurrent jurisdiction to enforce the claimant's right, statutes of limitation were to be as

25. *Dugan v. Rank,* 372 U.S. 609, 620–623, 83 S.Ct. 999, 1006–1008, 10 L.Ed.2d 15, 24–25 (1963); *Ogletree v. McNamara,* 449 F.2d 93, 99–100 (6th Cir. 1971); *Allen v. Allen,* 291 F.Supp. 312, 314 (S.D.Iowa 1968).

26. See text *supra* at note 23.

27. See, *e.g., Crown Coat Front Co. v. United States,* 386 U.S. 503, 510–511, 87 S.Ct. 1177, 1181–1182, 18 L.Ed.2d 256, 263 (1967); *N. V. Philips' Gloeilampenfabrieken v. Atomic Energy Comm'n, supra* note 18, 114 U.S.App.D.C. at 405, 316 F.2d at 406.

28. Compare *Hartford Life Ins. Co. v. Title Guar. Co.,* 172 U.S.App.D.C. 156, 160, 520 F.2d 1170, 1174 (1975); *Emmett v. Eastern Dispensary & Cas. Hosp.,* 130 U.S.App.D.C. 50, 55–57, 396 F.2d 931, 936–938 (1967); *Westinghouse Elec. Corp. v. City of Burlington,* 122 U.S.App.D.C. 65, 67–68, 351 F.2d 762, 764–765 (1965).

Although appellant was in and out of the courts before initiating the present case, we need not decide whether any of his prior suits tolled the limitation period because, by our computations, the six-year period expired in any event prior to institution of the action now under review. Administrative remedies were exhausted on April 26, 1966, and the present litigation commenced on February 4, 1975— eight years, nine months and eight days later. Appellant's suit under the Freedom of Information Act got under way on November 27, 1967, and ended on October 27, 1969, a period of one year, eleven months. His first *pro se* complaint was filed on October 16, 1971, and the proceeding initiated by his *pro se* mandamus complaint terminated June 2, 1972—a period of seven months, seventeen days, assuming that there was no time gap between them. The aggregate of the three previous suits, then, is two years, six months and seventeen days, which when subtracted from the eight years, nine months and eight days elapsing from exhaustion of remedies to inception of the instant case, leaves six years, two months and twenty-one days—more, of course, than the six-year limitation period.

29. Compare *Kirby v. United States,* 201 Ct.Cl. 527 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Middleman v. United States,* 91 Ct.Cl. 306, 307–308 (1941); *Perry v. United States,* 405 F.Supp. 1061, 1063 (E.D.Mo.1975).

30. *Patterson v. Hewitt,* 195 U.S. 309, 319, 25 S.Ct. 35, 37, 49 L.Ed. 214, 218 (1904); *Godden v. Kimmell,* 99 U.S. 201, 202, 25 L.Ed. 431 (1878); *Hayward v. Eliot Nat'l Bank,* 96 U.S. 611, 617–618, 24 L.Ed. 855, 857–858 (1877). But see *Washington Loan & Trust Co. v. Darling,* 21 App.D.C. 132, 140 (1903); *Royal Air Properties, Inc. v. Smith,* 312 F.2d 210, 214 (9th Cir. 1962).

31. Parts IV–V *infra.*

32. This occurred in the federal system in 1938.

forcefully applied in equity as at law.[33] A sufficient—though perhaps not the sole—reason was that, in all such instances, the statute imposed its restraint on the claim in suit, and not merely on the court in which it was asserted.[34] For obviously greater reason, the concurrency rule continues in full vigor after the procedural wedding of law and equity.[35]

We have no doubt but that the rule, independently of any other consideration, governs the case at bar. The one right that appellant presses in this litigation is to freedom from legally unjustified molestation in the job he held as an employee of the Navy. On the premise that the right has been infringed by an unlawful discharge, appellant demands redress in the form of both restoration and damages. While the former undoubtedly partakes of an equitable hue, the latter undeniably is legal relief in an ancient role; and while these complementary remedies are capable of that sort of distinction, "[t]here is in fact but a single right and single default involved . . . ."[36]

This, we find, is the kind of parallelism that demonstrates applicability of the concurrency rule. As we read the Supreme Court's pronouncements on the subject, only when a court is importuned "to enforce rights cognizable only in equity [are] statute[s] barring legal causes of action . . . not controlling."[37] Put another way, "[t]he decisive feature . . . which gives jurisdiction the flavor of concurrency, is not the narrow question of whether formal relief requested in a particular action is equitable or legal, primary or incidental, but the broader determination of whether the federal right in issue may be judicially enforced in any action by means both legal and equitable."[38] Additionally to the binding effect of the Supreme Court's expositions of federal law, this view is thoroughly consistent with our own rather numerous holdings in the area[39] as well as those of other courts.[40]

33. *Russell v. Todd,* 309 U.S. 280, 289, 60 S.Ct. 527, 532, 84 L.Ed. 754, 761 (1940); *Baker v. Cummings,* 169 U.S. 189, 206, 18 S.Ct. 367, 373, 42 L.Ed. 711, 718–719 (1898); *Metropolitan Bank v. St. Louis Dispatch Co.,* 149 U.S. 436, 448, 13 S.Ct. 944, 948, 37 L.Ed. 799, 803 (1893); *Moran v. Schlosberg,* 67 App.D.C. 163, 165–166, 90 F.2d 408, 410–411 (1937); *Anglo-Columbian Dev. Co. v. Stapleton,* 57 App.D.C. 209, 211, 19 F.2d 683, 685 (1927).

34. *Hurdle v. American Sec. & Trust Co.,* 59 App.D.C. 58, 60, 32 F.2d 954, 956 (1929).

35. *E.g., Cope v. Anderson,* 331 U.S. 461, 463–464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602, 1607 (1947); *Filson v. Fountain,* 90 U.S.App.D.C. 273, 274, 197 F.2d 383, 384 (1952). See also cases cited *infra* notes 38, 40.

36. *Hurdle v. American Sec. & Trust Co., supra* note 34, 59 App.D.C. at 60, 32 F.2d at 956.

37. *Russell v. Todd, supra* note 33, 309 U.S. at 291, 60 S.Ct. at 533, 84 L.Ed. at 762. See also *Holmberg v. Armbrecht, supra* note 17, 327 U.S. at 395, 66 S.Ct. at 584, 90 L.Ed. at 746.

38. *Tobacco & Allied Stocks v. Transamerica Corp.,* 143 F.Supp. 323, 327 (D.Del.1956), aff'd, 244 F.2d 902 (3d Cir. 1957).

39. In addition to cases cited *supra* notes 33–35, see *Washington Loan & Trust Co. v. Darling, supra* note 30, 21 App.D.C. at 140; *Patten v.*

*Warner,* 11 App.D.C. 149, 161–162 (1897); *Sis v. Boarman,* 11 App.D.C. 116, 121–122 (1897).

40. *Swan v. Board of Higher Educ.,* 319 F.2d 56, 59–60 n. 5 (2d Cir. 1963); *Baker v. F. & F. Inv.,* 420 F.2d 1191, 1193 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 41, 27 L.Ed.2d 49 (1970); *Tobacco & Allied Stocks v. Transamerica Corp., supra* note 38, 143 F.Supp. at 325–326; *Saylor v. Lindsley,* 302 F.Supp. 1174, 1182 (S.D.N.Y.1969), *rev'd on other grounds,* 456 F.2d 896 (2d Cir. 1972).

We are advertent to decisions in the Third Circuit assessing concurrency, not on the basis of availability of a legal remedy for the asserted violation, but according to whether equitable relief is needed to make the plaintiff whole. If so, that court rules, an applicable statute of limitations bars the legal remedy but the propriety of equitable relief is a matter of laches. *Churma v. United States Steel Corp.,* 514 F.2d 589, 590 n. 2 (3d Cir. 1975); *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1256 (3d Cir. 1974). In our view, however, the vital inquiry is not the type of relief demanded but the nature of the right at stake, and it is the availability rather than the adequacy of legal redress that harmonizes with the Supreme Court's interpretation of concurrency. See text *supra* at note 35. Moreover, since equitable relief may be granted only when the remedy at law is inadequate, the test of adequacy can hardly be expected to ever summon the applicability of the statute. See Note, *Laches in Federal Sub-*

One decision we may note with particular profit.[41] In an action charging violation of federal civil rights legislation by the plaintiff's alleged improper suspension from a state educational institution,[42] the Second Circuit took pains to consider "whether, because his complaint seeks not damages but rather declaratory and injunctive relief, it should be considered solely 'equitable'. and hence as governed not by a statute of limitations but rather by the doctrine of laches."[43] The court "concluded . . . that since plaintiff could also have sought Civil Rights Act relief by way of damages, he is not here asserting 'a federal right for which the sole remedy is in equity,' . . and hence the situation is one of 'concurrent' legal and equitable jurisdiction, in which case the statute of limitations does apply."[44]

Surely the same result follows where, as here, legal as well as equitable relief is an object of the suit.[45] The all-important factor from our viewpoint is that despite the historical dissimilarity of the remedies pursued, the right they purportedly would vindicate is single and indivisible. Where that is so, and remediation does not lie exclusive-

ly within the domain of equity, the availability of legal relief to enforce the underlying right summons the statute of limitations into play as to the whole.

## V

The case before us calls for an application of the concurrency doctrine even more peculiarly and strongly than the coexistence of legal and equitable remedies ordinarily would. Section 2401(a) is part of the Tucker Act—century-old legislation by which district courts share with the Court of Claims jurisdiction over suits against the United States.[46] Save only for a district-court ceiling in terms of amount involved,[47] jurisdiction is the same,[48] and the six-year limitation on district-court suits coincides exactly with the limitation statutorily imposed upon litigation instituted in the Court of Claims.[49] Equally importantly, the construction of the Tucker Act over the years has consistently been that district courts derive from it no greater power than the Court of Claims possesses under its own enabling legislation.[50] A factor prominently underpinning this interpretation, the Supreme Court has declared, is "the embar-

stantive Law: Relation to Statutes of Limitation, 56 B.U.L.Rev. 970, 975 (1976). Then, too, the adequacy approach necessitates a close analysis of the pleadings to ascertain whether legal relief is calculated to suffice, a kind of formalism at odds with the Federal Rules of Civil Procedure. See *Tobacco & Allied Stocks v. Transamerica Corp., supra* note 38, 143 F.Supp. at 326–327.

41. *Swan v. Board of Higher Educ., supra* note 40.

42. Jurisdiction was invoked under 28 U.S.C. § 1343(3) (1970) and 42 U.S.C. § 1983 (1970). 319 F.2d at 57.

43. 319 F.2d at 59 n. 5 (citation omitted).

44. *Id.* at 59–60 n. 5, quoting *Holmberg v. Armbrecht, supra* note 17, 327 U.S. at 395, 66 S.Ct. at 584, 90 L.Ed. at 746 (citations omitted).

45. See cases cited *supra* notes 32–35, 38–40.

46. Act of Mar. 3, 1887, 24 Stat. 505, ch. 359, as amended, Act of Mar. 3, 1911, ch. 231, 36 Stat. 1087, 1093 *et passim.* The provisions conferring jurisdiction on the district court are codified at 28 U.S.C. § 1346(a) (1970).

47. With exceptions not pertinent here, the Court of Claims has jurisdiction without regard to amount, 28 U.S.C. § 1491 (1970), while the federal district courts have jurisdiction "concurrent with the Court of Claims" over cases not exceeding $10,000. 28 U.S.C. § 1346(a)(2) (1970).

48. *Lee v. Thornton,* 420 U.S. 139, 140, 95 S.Ct. 853, 854, 43 L.Ed.2d 85, 86–87 (1975); *United States v. Sherwood,* 312 U.S. 584, 591, 61 S.Ct. 767, 771–772, 85 L.Ed. 1058, 1063–1064 (1941); *United States v. Jones,* 131 U.S. 1, 19, 9 S.Ct. 669, 671–672, 33 L.Ed. 90, 92 (1888).

49. 28 U.S.C. § 2501 (1970). The Tucker Act, *supra* note 46, which conferred jurisdiction on both the Court of Claims and the federal district (and then-circuit) courts, originally contained the six-year limitation on suits in the Court of Claims, but did not limit suits in district courts. This ambiguity was rectified by the adoption of what is now § 2401(a) in 1911.

50. See cases cited *supra* note 48.

rassments which would attend the defense of suits brought against the Government if the jurisdiction of district courts were not deemed to be as restricted as that of the Court of Claims." [51]

Until recently, the Court of Claims had "specific jurisdiction only to award damages, [and] not specific relief," [52] and district courts acting under the Tucker Act were similarly confined.[53] This restraint has endured notwithstanding that the district courts have historically entertained suits for restoration to federal employment, couched in terms of mandamus.[54] And in 1964 the Tucker Act jurisdiction of district courts was broadened to comprehend actions for money judgments in federal employee actions.[55] Thus the district courts

might hear, under these jurisdictional heads, suits seeking job-restoration, monetary awards, or both, while the Court of Claims was then restricted to money judgments.

■ In 1972, the Court of Claims' remedial authority was enlarged to include job-reinstatement [56] in order "[t]o provide an entire remedy and to complete the relief afforded by the [monetary] judgment." [57] Thus, at long last, the powers of district courts and the Court of Claims in the federal-employment area were ostensibly congruent. The fact is, however, the six-year limitation for litigation in that court blocks reinstatement whenever it would bar a judgment for money.[58] Unless, then, dis-

---

51. *United States v. Sherwood, supra* note 48, 312 U.S. at 591, 61 S.Ct. at 772, 85 L.Ed. at 1064.

52. *Glidden Co. v. Zdanok,* 370 U.S. 530, 537, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671, 691 (1962) (per Harlan, J.). See *United States v. King,* 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52, 54 (1968); *United States v. Jones, supra* note 48, 131 U.S. at 16–17, 9 S.Ct. at 670–671, 33 L.Ed. at 91.

53. See *Lee v. Thornton, supra* note 48, 420 U.S. at 140, 95 S.Ct. at 853–854, 43 L.Ed.2d at 86–87; *Richardson v. Morris,* 409 U.S. 464, 465–466, 93 S.Ct. 629, 631, 34 L.Ed.2d 647, 649–650 (1973). *Cf. United States v. Sherwood, supra* note 48, 312 U.S. at 591, 61 S.Ct. at 771, 85 L.Ed. at 1063.

54. See, *e.g., Levine v. Farley,* 70 App.D.C. 381, 385, 107 F.2d 186, 190 (1939), *cert. denied,* 308 U.S. 622, 60 S.Ct. 377, 84 L.Ed. 519 (1940). *Cf. Hammond v. Hull,* 76 U.S.App.D.C. 301, 303, 131 F.2d 23, 25 (1942), *cert. denied,* 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145 (1943). See also Eisenberg, *The Influence of the Writ of Mandamus in Federal Personnel Litigation,* 45 Geo.L.J. 388, 396 (1957); Murphy, *Judicial Review of the Removal of Federal Employees,* 22 Fed.B.J. 25, 26–27 (1962). In *Borak v. Biddle,* 78 U.S.App.D.C. 374, 377, 141 F.2d 278, 281, *cert. denied,* 323 U.S. 738, 65 S.Ct. 42, 89 L.Ed. 591 (1944) (giving declaratory judgment that dismissal was wrongful, but reserving the writ in case of official recalcitrance). As time wore on, the origin of this court's jurisdiction to grant reinstatement was obscured even as the scope of review grew broader than that associated with mandamus. See, *e.g., Pelicone v. Hodges,* 116 U.S.App.D.C. 32, 320 F.2d 754 (1963). See also Byse & Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and*

*"Nonstatutory" Judicial Review of Federal Administrative Action,* 81 Harv.L.Rev. 308, 342–344 (1968).

Act of Oct. 5, 1962, Pub.L. No. 87–748, § 1(a), 76 Stat. 744, codified as 28 U.S.C. § 1361 (1970) bestowed mandamus jurisdiction on all federal district courts. Prior to that enactment, only the courts of the District of Columbia had mandamus jurisdiction. Compare *M'Intire v. Wood,* 11 U.S. (7 Cranch.) 504, 3 L.Ed. 420 (1813), with *Kendall v. United States ex rel. Stokes,* 37 U.S. (12 Pet.) 524, 9 L.Ed. 1181 (1838).

55. Act of Aug. 30, 1964, Pub.L. No. 88–519, 78 Stat. 699, repealed 28 U.S.C. § 1346(d)(2), which had deprived district courts of power to render such awards. See *Almour v. Pace,* 90 U.S.App.D.C. 63, 193 F.2d 699 (1951). This reform eliminated the "standard procedure of two suits, one in the district court, against the head of the offending department, for restoration of plaintiff to his job, and another in the Court of Claims for back salary." D. Schwartz & S. Jacoby, Government Litigation 221 (1963), citing *Borak v. United States,* 78 F.Supp. 123, 110 Ct.Cl. 236, *cert. denied,* 335 U.S. 821, 69 S.Ct. 43, 93 L.Ed. 375 (1948); *Borak v. Biddle, supra* note 54.

56. Act of Aug. 29, 1972, Pub.L. No. 92–415, 86 Stat. 652, amending 28 U.S.C. § 1491 (1970).

57. *Id.* See S.Rep. No. 1066, 92d Cong., 2d Sess. 2–3 (1972), U.S.Code Cong. & Admin.News 1972, p. 3116; H.R.Rep. No. 1023, 92d Cong., 2d Sess. 1–3 (1972).

58. *Cf. Kirby v. United States, supra* note 29, 201 Ct.Cl. at 537–538. This interpretation seems correct. See authorities cited *supra* note 57.

trict-court reinstatement proceedings are similarly time-restricted, the symmetry between the two courts which Congress has endeavored to promote in employee cases is to that extent completely destroyed.

To tolerate a job-restoration effort through mandamus sought after expiration of Section 2401(a)'s six-year period is itself to wage war with the established requirement that the remedy be invoked with dispatch.[59] Even more alarmingly, it would allow the claimant to pursue in a district court an objective he could not aspire to in the Court of Claims, and thereby upset the congruity for which Congress ever so recently has striven. In determining the propriety of an application of the concurrency rule, we are not at liberty to ignore congressional policy, or more egregiously to frustrate it.

We reject, then, the notion that Section 2401(a) does not extend to the equitable as well as common law features of appellant's claim. We hold that his suit is barred in its entirety.[60] It follows that the Navy's motion to dismiss was well taken,[61] and that the District Court's grant must be

*Affirmed.*

McGOWAN, Circuit Judge, concurring separately:

To affirm the dismissal by the District Court of the complaint in this case, it is enough for me to recognize, as has the Ninth Circuit, *Werner v. United States*, 188 F.2d 266, 268 (1951) (*and see Screven v.*

*United States*, 207 F.2d 740, 741 (5th Cir. 1953)), that 28 U.S.C. § 2401(a) constitutes a time bar uniformly applicable to both equitable and legal claims. The purpose of Congress to interpose this statute of limitations against all claims, legal and equitable, seems clear to me from the fact that the statutory predecessor of § 2401(a) referred to "suits" against the United States. The shift to the phrase "civil action" was obviously intended to reflect the merger of law and equity which had been a central objective of the Federal Rules of Civil Procedure promulgated by the Supreme Court a decade earlier. When, in the wake of that significant simplification of legal doctrine, Congress in 1948 commanded that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues," there can be no mistaking its purpose to lay to rest the ancient distinctions.

---

**59.** See, *e.g., United States ex rel. Arant v. Lane*, 249 U.S. 367, 372, 39 S.Ct. 293, 294, 63 L.Ed. 650, 652 (1919), where, in holding the petition for mandamus to restore to position untimely, the Court said:

> When a public official is unlawfully removed from public office, . . . obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.

*Cf. Caswell v. Morgenthau*, 69 App.D.C. 15, 17, 98 F.2d 296, 298, *cert. denied*, 305 U.S. 596, 59 S.Ct. 81, 83 L.Ed. 378 (1938).

**60.** Although we do not reach the question, it is noteworthy that two other circuits have found § 2401(a) to bar equitable relief by its own terms. *Screven v. United States*, 207 F.2d 740, 741 (5th Cir. 1953); *Werner v. United States*, 188 F.2d 266, 268 (9th Cir. 1951).

**61.** An action is dismissible when the complaint shows on its face that the statute of limitations interposes an insuperable barrier. *Jones v. Rogers Memorial Hosp.*, 143 U.S.App.D.C. 51, 53, 442 F.2d 773, 775 (1971); *Hanna v. United States Veterans' Administration Hosp.*, 514 F.2d 1092, 1094–1095 (3d Cir. 1975); *White v. Padgett*, 475 F.2d 79, 85 (5th Cir.), *cert. denied*, 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975).